

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-1997

# Polselli v. Nationwide Mutl Fire

Precedential or Non-Precedential:

Docket
96-1107

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Polselli v. Nationwide Mutl Fire" (1997). *1997 Decisions.* Paper 234.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/234

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1107

REGINA POLSELLI; RUDOLPH R. POLSELLI,
        (Intervenor-Plaintiff in D.C.)

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
        Regina Polselli,
        Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 91-cv-01365)

Argued
February 7, 1997

Before: STAPLETON and MANSMANN, Circuit Judges
and RESTANI, Judge.*

(Filed September 30, 1997)

        Harry P. Begier, Jr., Esquire
          (ARGUED)
        Harry P. Begier, Jr., Ltd.
        1650 Market Street
        One Liberty Place, 50th Floor
        Philadelphia, PA 19103

          Counsel for Appellant

_____

*Honorable Jane A. Restani, Judge, United States Court of International
Trade, sitting by designation.

        R. Bruce Morrison, Esquire
          (ARGUED)
        Marshall, Dennehey, Warner,
         Coleman & Goggin
        1845 Walnut Street
        Philadelphia, PA 19103

          Counsel for Appellee

OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this case of first impression, we must decide whether a plaintiff who prevails on a claim for bad faith conduct, pursuant to 42 Pa. Cons. Stat. Ann. S 8371, may recover attorney's fees against an insurer for time spent prosecuting the bad faith claim itself, in addition to those fees attributable to prosecuting the underlying insurance contract claim, under section 8371(3). We conclude that such fees may be assessed.

We are also faced with the issue of whether, and under what circumstances, a court may enhance a fee under Pennsylvania law to reflect the contingent risk of nonpayment assumed by the plaintiff 's attorney in accepting the case on a contingent-fee basis. We conclude that a court may enhance a fee in such circumstances, but only to the extent that the enhancement (1) reflects the contingent risk of the particular case and (2) is not based on factors already considered in calculating the lodestar amount.

We will reverse the judgment of the district court in part and will remand for further proceedings.

I.

After a fire destroyed her home, Regina Polselli sued Nationwide Mutual Fire Insurance Company for benefits due under her insurance contract with Nationwide and for damages under 42 Pa. Cons. Stat. Ann. S 8371 for

Nationwide's alleged bad faith in handling her claims.1 On the day of trial, the parties settled Polselli's contract claims for building loss, personalty loss, and additional living expenses. The court conducted a bench trial on the bad faith claim, the only remaining claim.

The court found, by a preponderance of the evidence, that Nationwide had acted in bad faith with respect to Polselli's personalty and living expense claims and awarded $90,000 in punitive damages. Polselli v. Nationwide Mut. Fire Ins. Co., No. CIV.A.91-1365, 1992 WL 247271 (E.D. Pa. Sept. 23, 1992). The court did not assess attorney's fees at that time, or upon motion for reconsideration, because Polselli had not presented evidence at trial to establish a reasonable assessment. Id., 1992 WL 247271, at *8; Polselli v. Nationwide Mut. Fire Ins. Co., No. CIV.A.91-1365, 1993

WL 137376, at *1 (E.D. Pa. Apr. 30, 1993).

Polselli subsequently filed a Motion to Assess Costs and Attorney's Fees accompanied by a verified statement signed by Polselli's counsel, Harry P. Begier, Jr. After an evidentiary hearing, the court assessed costs and attorney's fees against Nationwide. Polselli v. Nationwide Mut. Fire Ins. Co., No. CIV.A.91-1365, 1993 WL 479050 (E.D. Pa. Nov. 12, 1993). Begier submitted a list of billable hours totaling 346.9 hours, and Nationwide did not dispute the reasonableness of this claim. Id., 1993 WL 479050, at *4. The court determined that Begier's regular hourly rate was $300. The court thus calculated the "lodestar" amount to be $104,070 ($300 per hour multiplied by 346.9 hours). Finding the case to be unique in that it was based upon the "relatively new" Pennsylvania bad faith statute, the court concluded that Begier faced a "substantial risk of a minimal recovery and [an] extensive number of hours risked . . . with no guarantee of remuneration." Id. Citing what it called the "closely analogous" provisions of Pa. Stat. Ann. tit. 41, S 503, which permit a court to enhance a fee award

_____

1. The district court had diversity jurisdiction pursuant to 28 U.S.C. S 1332. A federal court exercising diversity jurisdiction must apply the substantive law of the state whose laws govern the action. Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1365 (3d Cir. 1993). The parties agree that Pennsylvania law governs this dispute.

3

based on the "contingency or the certainty of compensation," the court found it appropriate to increase the lodestar amount by sixty percent, or $62,442. Id. The court assessed a total attorney's fee against Nationwide in the amount of $166,412. Id.

Nationwide appealed both the merits determination of bad faith and the subsequent assessment of fees and costs. We reversed the merits determination and remanded for application of the "clear and convincing evidence" standard to the bad faith claim. Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 750-51 (3d Cir. 1994); see also Terletsky v. Prudential Property & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (bad faith must be proven by clear and convincing evidence). We did not reach the issue of attorney's fees.

On remand, the district court found that Polselli satisfied the higher burden of proof. Polselli v. Nationwide Mut. Fire Ins. Co., No. CIV.A.91-1365, 1995 WL 430571 (E.D. Pa. July 20, 1995). We affirmed by judgment order. Polselli v.

Nationwide Mut. Fire Ins. Co., No. 95-1715 (3d Cir. May 3, 1996).

Polselli filed a Renewed Motion to Assess Attorney's Fees, and the district court heard oral argument on the motion. At that time, Nationwide conceded that $300 per hour was a reasonable rate for Begier's services.2  Likewise, Nationwide did not challenge the hours claimed by Begier. Rather, Nationwide argued that section 8371 allows for the award of attorney's fees only with respect to those hours expended on the underlying insurance contract claim and not on the bad faith claim itself.

The district court agreed with Nationwide. The court concluded that section 8371 creates a new cause of action, independent and distinct from the underlying policy action. Further, the court found that "[t]o allow attorney['s] fees for prosecuting bad faith claims would reimburse plaintiff for costs beyond those necessitated by the insurer's conduct, indirectly augmenting the punitive damages already

_____

2. We express no view regarding whether $300 per hour is a reasonable rate for Begier's services.

awarded." Polselli v. Nationwide Mut. Fire Ins. Co., No. CIV.A.91-1365, 1995 WL 678212, at *3 (E.D. Pa. Nov. 14, 1995). The court assessed fees in favor of Polselli only for work related to the insurance contract claims for personalty losses and living expenses, and not for the time spent litigating the bad faith claim. Id.

The parties subsequently filed a stipulation allocating 154.9 hours for the time Begier dedicated to the contractual claims as to personalty losses and living expenses. The revised lodestar amount was therefore $46,470 ($300 per hour multiplied by 154.9 hours).

Nationwide also argued that the court should not enhance the fee as it did in its November 1993 order. The court agreed: "Given the decision not to assess fees for work on plaintiff's bad faith claim, the court's earlier rationale for enhancing the hourly rate no longer applies." Id. The court reasoned that its earlier justification for the sixty percent enhancement -- the complexity of the bad faith claim and the uncertainty of prevailing on that claim -- did not apply to an award of fees premised solely on time spent prosecuting a straightforward insurance contract claim. Id., 1995 WL 678212, at *2-3. The court assessed attorney's fees in the amount of $46,470 against

Nationwide.

Nationwide appealed from the court's order of attorney's fees on the ground that Polselli was not entitled to fees because Nationwide had not acted in bad faith in its handling of the underlying insurance claims, a position still then pending in Nationwide's appeal from the merits of the district court's finding of bad faith. Polselli cross-appealed from the district court's calculation of the fee assessment. When we affirmed the district court's finding of bad faith, Polselli v. Nationwide Mut. Fire Ins. Co., No. 95-1715 (3d Cir. May 3, 1996), Nationwide withdrew its appeal. The only matter presently before us is Polselli's appeal from the assessment of attorney's fees.3

_____

3. We have jurisdiction over this appeal from afinal order pursuant to 28 U.S.C. S 1291. The district court's application and interpretation of state
law is subject to plenary review. Hofkin v. Provident Life & Accident Ins.

5

II.

In 1981, the Pennsylvania Supreme Court refused to create a common law "bad faith" cause of action for a plaintiff whose insurance company wrongfully refused to pay a claim under an insurance policy. D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 431 A.2d 966 (Pa. 1981); see also Johnson v. Beane, 664 A.2d 96, 99 n.3 (Pa. 1995) (there is no common law remedy in Pennsylvania for insurer bad faith). In 1990, in what some call a delayed response to D'Ambrosio, the Pennsylvania legislature enacted 42 Pa. Cons. Stat. Ann. S 8371, entitled "Actions on Insurance Policies." The statute reads as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. S 8371. In this case of first

impression, we must decide whether a cause of action for bad faith under section 8371 is itself an "action arising under an insurance policy."

Although the issue of whether a section 8371 cause of action arises under an insurance policy is an open question, in other contexts a Pennsylvania intermediate

_____

Co., 81 F.3d 365, 369 (3d Cir. 1996). In the absence of any precedent of the Pennsylvania Supreme Court, we must predict how that court would decide this issue. Winterberg v. Transportation Ins. Co., 72 F.3d 318, 321-22 (3d Cir. 1995). In predicting how the state supreme court would rule on the issue, we should give intermediate appellate court decisions "significant weight in the absence of an indication that the highest state court would rule otherwise." City of Phila. v. Lead Indus. Ass'n, 994 F.2d 112, 123 (3d Cir. 1993).

6

appellate court has held that claims brought under section 8371 are "distinct from the underlying contractual insurance claims from which the dispute arose." Nealy v. State Farm Mut. Auto. Ins. Co., 695 A.2d 790, 792 (Pa. Super. Ct. 1997) (deciding that unlike contract cause of action, "distinct" bad faith cause of action could not be decided by arbitration panel but had to be decided by court); accord March v. Paradise Mut. Ins. Co., 646 A.2d 1254, 1256 (Pa. Super. Ct. 1994) (deciding that bad faith cause of action was not barred by policy's limitations clause since it was "separate and distinct" from underlying contract cause of action, which was barred); Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1231 (Pa. Super. Ct. 1994) (permitting "separate and distinct" bad faith cause of action to be based on alleged violation of Unfair Insurance Practices Act); see also Winterberg v. Transportation Ins. Co., 72 F.3d 318, 326 (3d Cir. 1995) (noting that "Pennsylvania case law shows an intent to allow a separate action on the `bad faith' statute").

Section 8371 provides an "independent cause of action to an insured that is not dependant upon success on the merits, or trial at all, of the contract claim." Nealy, 695 A.2d at 793; accord March, 646 A.2d at 1256 (insured's claim for bad faith is "independent of the resolution of the underlying contract claim"); Doylestown Elec. Supply Co. v. Maryland Cas. Ins. Co., 942 F. Supp. 1018, 1020 (E.D. Pa. 1996) (insured may bring bad faith claim prior to resolution of contract dispute). While not obvious from the language of section 8371, it is apparent that Pennsylvania courts have interpreted section 8371 to create "a cause of action that exists separately and independently from a claim on the

insurance contract itself." Winterberg, 72 F.3d at 326.

Nationwide argues, and the district court agreed, that since a section 8371 cause of action is separate and distinct from the cause of action to obtain benefits due under the policy, the section 8371 cause of action is not an "action arising under an insurance policy" and fees may not be awarded for the time spent litigating the bad faith claim. We conclude, however, that the separate and independent cause of action for bad faith is still an action"arising under an insurance policy" such that attorney's fees may be

awarded for time spent litigating the issue of bad faith. We reach this conclusion for three reasons: (1) the bad faith cause of action depends on the existence of a predicate contract cause of action; (2) the bad faith cause of action enables an insured to enforce an insurer's implicit contractual duty of good faith; and (3) assessment of attorney's fees for time spent prosecuting the bad faith cause of action is necessary to fulfill the "make whole" purpose of section 8371(3).

Initially, we observe that under the plain language of the statute, it is reasonably clear that a section 8371 claim may not be the sole claim of an insured. Section 8371 provides that "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions . . . ." 42 Pa. Cons. Stat. Ann. S 8371. This language implies that a determination of bad faith is merely an additional finding to be made in a predicate action arising under an insurance policy. Absent a predicate action to enforce some right under an insurance policy, an insured may not sue an insurer for bad faith conduct in the abstract.

In Winterberg, the district court concluded that the bad faith claim "must be related to at least one other colorable claim over which the court has jurisdiction." Winterberg v. CNA Ins. Co., 868 F. Supp. 713, 722 (E.D. Pa. 1994), aff'd, 72 F.3d 318 (3d Cir. 1995). The court reasoned that "[h]ad the legislature wanted to allow a person wronged by his or her insurance company to sue directly, and only, under [section] 8371, surely it would not have used the language it did." Id. at 722 n.13 (emphasis in original). We agree. Instead of creating a cause of action for bad faith conduct that can exist in a vacuum, the Pennsylvania legislature provided an insured with additional remedies upon a finding of bad faith made in a predicate action under an insurance policy.

Of course, an insured may list the section 8371 cause of action and the contract cause of action as separate counts in the same complaint. E.g., Boring v. Erie Ins. Group, 641 A.2d 1189, 1190 (Pa. Super. Ct. 1994); Doylestown, 942 F. Supp. at 1020 (noting that courts interpreting section 8371 have "consistently entertained multi-count complaints

8

containing both unresolved insurance contract disputes and bad faith claims"). An insured may also, as Polselli did here, settle the claim under the policy and proceed to trial on the bad faith claim alone. Indeed, the bad faith claim may remain viable even if the insured fails to file suit on the predicate policy claim within the period required by the policy. March, 646 A.2d at 1256-57; accord Margolies v. State Farm Fire & Cas. Co., 810 F. Supp. 637, 641-42 (E.D. Pa. 1992). At the very least, however, the predicate policy cause of action must be ripe before a section 8371 cause of action may be recognized. Doylestown, 942 F. Supp. at 1019-20 (so long as claim under insurance policy is ripe for judicial determination, bad faith issue is also ripe); see also Nealy, 695 A.2d at 793, 794 n.4 (bad faith claim runs "parallel" to contractual claim and can be "brought contemporaneously with or subsequent to" the contractual claim); March, 646 A.2d at 1256 ("[S]ection 8371 provides relief only in actions `arising under' an insurance policy . . . . [Section] 8371 was promulgated to provide additional relief to insureds . . . .") (emphasis supplied).4

Next, we conclude that since an insurer's duty of good faith toward an insured is implicit in every insurance policy, an action to enforce that duty must necessarily "arise under" that policy. There is no common law private remedy for bad faith conduct, but the Pennsylvania Supreme Court has long recognized that an insurer must act with the "utmost" good faith toward its insured. Fedas v. Insurance Co. of Pa., 151 A. 285, 286 (Pa. 1930); accord Dercoli v. Pennsylvania Nat'l Mut. Ins. Co., 554 A.2d 906, 909 (Pa. 1989) (insurer was "bound" to act in good faith toward the insured). In Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228 (Pa. Super. Ct. 1994), the court concluded that an insurer's duty of good faith exists

_____

4. In the ordinary case, the insured's insurance contract cause of action and bad faith cause of action may be brought in the same action. It may be, however, that an insured is unable to bring the contract action due to the running of the applicable limitations period. See, e.g., March, 646 A.2d at 1256. In that case, the insured should indicate that the predicate contract cause of action, which was viable at one time, may not now be brought due to the running of the applicable limitations

period.

"because of the special relationship between an insurer and its insured and the very nature of the insurance contract. The insurer's duty of good faith, therefore, is contractual and arises because the insurance company assumes a fiduciary status by virtue of the policy's provisions which give the insurer the right to handle claims and control settlement." Id. at 1231.

In Okkerse v. Prudential Prop. & Cas. Ins. Co., 625 A.2d 663 (Pa. Super. Ct. 1993), the court held that section 8371 applied so long as the alleged bad faith conduct occurred after the effective date of section 8371, even though the insurance contract was entered into prior to the effective date of the section. Id. at 664. The court reasoned:

> [The insurer's] obligations under the policy issued prior to the effective date of section 8371 have not been changed. Section 8371 also does not affect either the terms of the insurance contract or the vested rights thereunder. It merely prohibits an insurer from engaging in a bad faith refusal to pay benefits due under the policy. An insurer did not have a right to act in bad faith toward its insured prior to the statute's enactment. Thus, it is clear that the statute is not being applied retroactively in this case.

Id. at 665-66 (citations and footnote omitted, emphasis supplied); see also Seeger by Seeger v. Allstate Ins. Co., 776 F. Supp. 986, 988 (M.D. Pa. 1991) (there is no contractual right to act in bad faith); Coyne v. Allstate Ins. Co., 771 F. Supp. 673, 675 (E.D. Pa. 1991) (insurer "never had the right to act in bad faith toward the insured").

In Winterberg v. Transportation Ins. Co., 72 F.3d 318 (3d Cir. 1995), we held that a workers' compensation claim is not "based on an insurance policy" within the meaning of section 8371:

> The [workers' compensation] claim is statutory and has its genesis in the contract of hire between the employer and employee, see, [Pa. Stat. Ann. tit. 77, S 431], not an insurance contract. The employer's obligation to pay for a compensable injury is not predicated on an insurance policy.

Id. at 325 n.4. In contrast, while a section 8371 bad faith claim itself is created by statute, the claim has its genesis in the policy of insurance. The insurer's duty of good faith toward an insured is predicated on the fiduciary relationship created at the inception of the contract between the parties. In other words, but for the insurance policy, Nationwide would not owe a duty of good faith to Polselli. The fact that Polselli's ability to enforce that duty was altered by statute does not change the fact that the duty itself arose by contract.

In deciding whether a section 8371 action "arises under" an insurance policy, we should determine where the insured's rights at issue arose, not whether the policy itself permits the insured to enforce those rights. In this case, a section 8371 action is brought to enforce an insured's right to be free from the bad faith conduct of the insurer. That right is inherent in every insurance policy, and it therefore "arises under" the insurance policy. The fact that the enforcement mechanism is statutory is of no consequence.5

Finally, an award of attorney's fees under section 8371 is meant "to compensate the plaintiff for having to pay an attorney to get that to which [the plaintiff was] contractually entitled. Along with interest, costs and delay damages, the object of an attorney fee award is to make the successful plaintiff completely whole." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 236 (3d Cir. 1997). In this case, Nationwide's bad faith conduct forced Polselli to incur attorney's fees to obtain the benefits due under the insurance policy. To be made "completely whole," therefore, Polselli needed to obtain those fees from Nationwide. To obtain those fees, however, Polselli was required to incur additional attorney's fees to prove, by clear and convincing evidence, that Nationwide acted in bad faith. In other

_____

5. Our view is informed by reference to the Pennsylvania legislature's use of the phrase "arising under" in other contexts. For example, Pa. R. Civ. P. 2207 is captioned "Actions Arising Under Foreign Law." Rule 2207 deals with actions brought "to enforce rights arising under the laws of some other jurisdiction." Pa. R. Civ. P. 2207 (emphasis supplied). Thus, in this context, an "action to enforce rights arising under [X]" is itself an "action arising under [X]."

11

words, to obtain the fees necessary to make Polselli whole, Polselli was required to incur additional fees.

This is not a traditional fee-shifting statute where a prevailing party may be automatically entitled to a reasonable fee. An insured is not entitled to recover her fees merely because she prevails on her claim to enforce the policy; rather, the insured must also prevail on the bad faith claim. The Pennsylvania rules of statutory construction state that, in general, the "provisions of a statute shall be liberally construed to effect their objects and to promote justice." 1 Pa. Cons. Stat. Ann. S 1928(c). The narrow construction of section 8371 proposed by Nationwide runs counter to this rule. If Polselli was unable to obtain the fees incurred in proving Nationwide's bad faith, Polselli would never be made whole and the purpose of section 8371(3) would be thwarted.[6]

We predict that the Pennsylvania Supreme Court would conclude that, upon a finding of bad faith conduct by clear and convincing evidence, a trial court may assess attorney's fees against an insured for the time spent (1) litigating the claim under the policy and (2) litigating the bad faith claim itself.[7]

_____

6. Cf. In re Tutu Wells Contamination Litig. , 120 F.3d 368 (3d Cir. 1997).
In Tutu Wells, the district court imposed heavy sanctions upon a law firm, several of its partners, and its client for discovery violations in connection with an environmental lawsuit. The court also imposed the sum of $120,000 on the law firm as counsel fees and costs incurred by the moving parties for the time they spent in connection with the underlying sanctions proceedings. We affirmed the award of counsel fees and costs. We reasoned:

> The time, effort, and resources expended in bringing sanctionable conduct to light would have been unnecessary had the sanctionable conduct never occurred. These costs are as much a harm to a party in the litigation as is the delay in the litigation or the substantive prejudice caused by the conduct. If we exclude from a possible award the costs of sanctions proceedings, we would undermine the compensatory goal of a sanctions award.

Id. at 388.

7. We recognize that some other jurisdictions draw a distinction between fees incurred by an insured to obtain benefits due under a policy and

12

III.

Section 8371 does not provide any guidance on how a

trial court should calculate a reasonable attorney's fee.8
Courts deciding cases under Pennsylvania law are guided
by Pennsylvania Rule of Civil Procedure 1716 when
considering the amount of a reasonable fee:

> In all cases where the court is authorized under
> applicable law to fix the amount of counsel fees it shall
> consider, among other things, the following factors:
>
> (1) the time and effort reasonably expended by the
> attorney in the litigation;
>
> (2) the quality of the services rendered;
>
> (3) the results achieved and benefits conferred upon
> the class or upon the public;
>
> (4) the magnitude, complexity and uniqueness of the
> litigation; and
>
> (5) whether the receipt of a fee was contingent on
> success.

Pa. R. Civ. P. 1716.9 The district court did not rely on Rule

_____

those incurred in prosecuting a bad faith claim against the insurer to
obtain damages that are not included in the policy benefits. See, e.g.,
Bernhard v. Farmers Ins. Exch., 885 P.2d 265, 271-72 (Colo. Ct. App.
1994), aff'd, 915 P.2d 1285 (Colo. 1996); Schwartz v. Farmers Ins. Co.
of Ariz., 800 P.2d 20, 22-23 (Ariz. Ct. App. 1990); Brandt v. Superior
Court, 693 P.2d 796, 798-800 (Cal. 1985); see also Kirchoff v. American
Cas. Co., of Reading, Pa., 997 F.2d 401, 406-07 (8th Cir. 1993)
(predicting South Dakota law). Other jurisdictions allow a successful
plaintiff to recover fees for time spent preparing and trying a bad faith
claim. See, e.g., Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1463-64
(10th Cir. 1989) (predicting Oklahoma law).

8. Like costs, attorney's fees under section 8371(3) may be assessed after
a finding of bad faith is made at the conclusion of trial. It is not
necessary for an insured's attorney to introduce evidence of attorney's
fees and costs at trial; rather, such evidence may be considered upon
motion following trial.

9. Before the adoption of Rule 1716, the Pennsylvania Supreme Court
instructed trial courts to consider, inter alia, the amount of work

13

1716; it looked instead to Pa. Stat. Ann. tit. 41,S 503,
which permits borrowers and debtors who prevail in usury
actions against their lenders to recover a "reasonable

amount for attorney's fee." Id. S 503(a). In determining the amount of a section 503 fee, the court may consider:

> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case;
>
> (2) the customary charges of the members of the bar for similar services;
>
> (3) the amount involved in the controversy and the benefits resulting to the client or clients from the services; and
>
> (4) the contingency or the certainty of the compensation.

Id. S 503(b).10

The question of what standard to apply in calculating attorney's fees and costs is a legal question and is subject to plenary review. While section 503 and Rule 1716 are similar, the district court should have looked to Rule 1716 in calculating a reasonable fee. Ultimately, however, we are not concerned with the specific list of factors the district court cited when it calculated the fee in this case. Rather, we turn to the task of determining whether the fees

_____

performed, the character of the services rendered, the difficulty of the problems involved, the importance of the litigation, the amount of money or value of the property in question, and the results the attorney was able to obtain. In re Trust Estate of LaRocca, 246 A.2d 337, 339 (Pa. 1968).

10. Contrary to Polselli's assertion, a court assessing a section 503 fee is not required to enhance a fee based on the contingency or the certainty of compensation. Indeed, whether the court even considers contingency is a matter within the court's discretion. Pa. Stat. Ann. tit. 41, S 503 (court "may" consider contingency). Even under Rule 1716, where consideration of contingency is required, a district court need not actually enhance a fee based on contingency.

assessed are, under the circumstances of the case, "reasonable."11

A.

We will affirm the judgment of the district court insofar

as it assessed attorney's fees in the amount of $46,470 against Nationwide for the time Begier spent litigating the contract claim. The district court first calculated the lodestar amount based on the stipulated hourly rate for Begier's work in non-contingency matters and stipulated number of hours allocated to the contract claim. [12] Assuming that an enhancement for contingent risk was permissible, see Pa. Stat. Ann. tit. 41,S 503(b)(4), the court considered a myriad of factors in an effort to determine whether it was appropriate to enhance the lodestar amount to account for the contingency or certainty of the compensation. The court found that the contract claim was not unique or complex, and that it did not entail a substantial risk of failure. Thus, the court concluded that a contingency enhancement was not appropriate for the time Begier spent litigating the contract claim. Polselli v. Nationwide Mut. Fire Ins. Co., No. CIV.A.91-1365, 1995 WL 678212, at *3-4 (E.D. Pa. Nov. 14, 1995). We will not interfere with the district court's exercise of discretion. On remand, the district court should not reconsider the fee award relating to prosecution of the contract claim.

_____

11. If the correct legal standards are applied and the findings of fact are
not clearly erroneous, the reasonableness of a fee award is reviewed only for abuse of discretion. Abrams v. Lightolier Inc., 50 F.3d 1204, 1219 (3d Cir. 1995); accord In re Trust Estate of LaRocca, 246 A.2d 337, 339 (Pa. 1968); Commonwealth v. PBS Coals, Inc., 677 A.2d 868, 870 (Pa. Commw. Ct.) ("award of attorney's fees and costs is within the discretion of the trial court, whose discretion will not be disturbed on appeal absent abuse of discretion"), appeal denied, 686 A.2d 1313 (Pa. 1996); Shaw by Ingram v. Bradley, 672 A.2d 331, 332 (Pa. Super. Ct. 1996).

12. The "lodestar" amount is a product of the number of attorney hours reasonably expended on the particular case and the reasonable hourly rate of compensation for the attorney's services. Adjustments to the lodestar amount are made as appropriate. While the Pennsylvania state courts have not yet embraced the lodestar method, we believe that the factors considered in Rule 1716 are implicitly taken into account in the lodestar method.

15

B.

We turn now to the district court's task on remand. Before it decided that Polselli was unable to recover attorney's fees for the time spent litigating the bad faith cause of action, the district court found that the bad faith claim was based on a relatively new statute, that there was little guidance from the statute or the caselaw, and that

Polselli faced a high risk of no recovery on the bad faith claim. Citing section 503, the court increased the lodestar amount by sixty percent to account for the "the contingency or the certainty of the compensation." Pa. Stat. Ann. tit. 41, S 503(b)(4). Since the district court later eliminated the enhancement when it determined that fees were unavailable for the bad faith claim, we are not in a position to review a final order of the district court imposing attorney's fees calculated with a contingency enhancement. We write further only to provide the district court with some guidance in the hope that this case, which began almost seven years ago and which has reached our court for decision three times, will soon draw to a close.

Initially, we are reminded that a trial court in a section 8371 action "may" assess attorney's fees and costs against an insurer upon a finding of bad faith, but it need not award such fees. The decision to assess attorney's fees and costs against an insured upon a finding of bad faith is wholly within the discretion of the trial court, whose discretion will not be disturbed on appeal absent abuse of discretion. Thus, if a district court exercises its discretion to assess fees for time spent litigating the contract cause of action, but not the time spent litigating the bad faith cause of action, or if it elects not to assess any fees at all, we will not disturb that decision absent abuse of discretion.13

Should the district court on remand elect to assess attorney's fees against Nationwide for the time spent litigating the bad faith claim, it must apply the proper legal

_____

13. Our ability to review, and reverse, the district court's decision not to
assess fees on Polselli's bad faith cause of action rests on the court's legal error in concluding that such fees may not be awarded as a matter of law. Had the court elected not to assess such fees as a matter of discretion, we could not have interfered with that decision.

16

standards in calculating such fees. Rule 1716 instructs the court to consider, inter alia, the magnitude, complexity and uniqueness of the litigation, and whether the receipt of a fee was contingent on success. Polselli asserts that the district court should consider two manifestations of contingency enhancement: (1) an enhancement to take into account the complexity and risk of Polselli's bad faith claim against Nationwide; and (2) an enhancement to reflect the risk of contingency-fee cases as a class. Nationwide contends that contingency enhancement is impermissible in any context. Absent guidance from the Pennsylvania courts

on these issues, we predict that the Pennsylvania Supreme Court would limit the use of contingency enhancements that reflect the risk of the particular contingency litigation and that it would reject the use of contingency enhancements that reflect the risk of contingency-fee cases as a class.

1.

In City of Burlington v. Dague, 505 U.S. 557 (1992), the Supreme Court held that the fee-shifting provisions of two federal statutes do not permit enhancement of a fee beyond the lodestar amount to reflect the fact that the prevailing party's attorneys were retained on a contingent-fee basis. The Court rejected the argument that "a `reasonable' fee for attorneys who have been retained on a contingency-fee basis must go beyond the lodestar, to compensate for risk of loss and of consequent nonpayment." Id. at 562.

The Court first rejected the use of contingency enhancements that reflect the risk of no recovery in a particular case. The Court concluded that an "enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar." Id. The Court reasoned that the attorney's contingent risk of no recovery in a particular case is the product of (1) the legal and factual merits of the claim and (2) the difficulty of establishing those merits. Id.

Rejecting the encouragement of attorneys to bring nonmeritorious claims, the Court noted that thefirst factor should not be considered in calculating a reasonable fee. Id.

17

at 563. In other words, the risk of no recovery in a case is high if the legal and/or factual merits of the case are low. In this context, to enhance a fee award based on degree of risk would encourage attorneys to bring nonmeritorious claims -- clearly not an objective of the typical fee-shifting statute. Id.

The Court noted that the second risk factor -- difficulty and complexity -- is ordinarily reflected in the lodestar, "either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so." Id. at 562. Taking into account the complexity or difficulty of a case would, therefore, ordinarily amount to double counting and would skew the calculation of a "reasonable" rate. Id. at 563.

The Supreme Court concluded that a contingency enhancement based on the attorney's contingent risk in a given case is unwarranted. Were this case based on a federal fee-shifting statute, we would instruct the district court pursuant to Dague not to consider the contingent risk Begier accepted when he agreed to pursue Polselli's bad faith claim against Nationwide.

Since this case is governed by Pennsylvania law, however, we must predict whether the Pennsylvania Supreme Court would permit consideration of the contingent risk of a particular case in calculating a reasonable fee for that case. We conclude that the Pennsylvania Supreme Court would permit such consideration in a bad faith claim under section 8371.

The federal fee-shifting statutes considered in Dague did not provide for consideration of contingent risk. If those statutes did require district courts to consider contingent risk, we believe that Dague would have been decided differently. The Dague majority found no justification for recognizing a common law enhancement for contingent risk; a statutory provision requiring consideration of enhancement would have been quite another matter.

Unlike courts assessing fees under the federal fee-shifting statutes like those considered in Dague, courts assessing fees under section 8371 are guided by Pennsylvania Rule of

18

Civil Procedure 1716. Rule 1716 provides that courts shall consider, among other things, the magnitude, complexity and uniqueness of the litigation and whether the receipt of a fee was contingent on success. Pa. R. Civ. P. 1716. Thus, even if the Pennsylvania Supreme Court was persuaded by Dague, it would be bound by Rule 1716.

While we predict that the Pennsylvania Supreme Court would permit courts to consider a case's contingent risk when calculating a reasonable fee, we also predict that the court would conclude that a contingency enhancement would not apply in every case. As the Supreme Court reasoned in Dague, a contingency enhancement often will duplicate factors already subsumed in the lodestar amount. For example, a difficult case may require a high number of hours dedicated to research or discovery. Or, it might require the skills of someone who ordinarily bills at a high hourly rate. Both of these factors are considered in calculating the lodestar amount, and they should not be reconsidered in enhancing the lodestar.

We predict that the Pennsylvania Supreme Court would permit a trial court to enhance the lodestar amount to account for a particular case's contingent risk only to the extent that those factors creating the risk are not already taken into account when calculating the lodestar amount. Thus, when a trial court is faced with a request to enhance a fee based on contingent risk arising from the magnitude, complexity and uniqueness of the litigation, the court should exercise caution so as not to skew the calculation of a reasonable rate by double counting. For example, if the complexity of a case is reflected in the high number of hours researching the complex issues or in the relatively high regular hourly rate of the attorney, complexity does not justify a contingency enhancement.

The court should also consider whether the attorney was able to mitigate the risk of nonpayment. For example, an attorney who has entered into a contingency-fee contract in a suit seeking substantial damages has significantly mitigated the contingent risk; in exchange for accepting the risk of nonpayment, the attorney obtains the prospect of compensation under the agreement substantially in excess of the lodestar amount. Likewise, "attorneys who are paid a

portion of their reasonable hourly fee irrespective of result have partially mitigated the risk of nonpayment." Rendine v. Pantzer, 661 A.2d 1202, 1229 (N.J. 1995).

We emphasize that the determination of a reasonable fee is an inherently case-specific endeavor. Just as every case is unique, so too are the particularized risks faced by attorneys accepting contingency-fee cases. We are therefore reluctant to provide courts with a specific list of factors to consider in determining whether and to what extent a contingency enhancement is appropriate in any given case. When applying Rule 1716, courts must consider whether the receipt of a fee was contingent on success. Courts must not, however, deviate from their ultimate responsibility -- the calculation of a "reasonable" fee. To the extent that the factors creating a contingent risk in a particular case are mitigated or are already taken into account when calculating the lodestar amount, a contingency enhancement is not "reasonable" and should not be applied.

In Rendine, the New Jersey Supreme Court departed from Dague and established a rule favoring the award of contingency enhancements to prevailing parties under the New Jersey Law Against Discrimination. The court held that "a counsel fee awarded under a fee-shifting statute

cannot be `reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed." Rendine, 661 A.2d at 1228. The court focused on risk of attorney non-payment, and it recognized that such risk will vary with the circumstances of each unique case. The court concluded that "contingency enhancements in fee-shifting cases ordinarily should range betweenfive and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar." Id. at 1231. We believe that our prediction of Pennsylvania law is not significantly different from the statement of New Jersey law in Rendine. See, e.g., id. at 1228 (acknowledging concern about overpayment and double counting).

20

2.

Polselli also contends that the district court should have considered a contingency enhancement to account for the riskiness of contingency-fee cases as a class. In her concurring opinion in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987) (Delaware Valley II), Justice O'Connor wrote that contingency enhancements should not be based on the particular risks of an individual case, but rather should be based on the risk of loss in the "class" of case. Id. at 731 (O'Connor, J., concurring). In Dague, the Court rejected this theory of enhancement. Dague, 505 U.S. at 563-65.14 In Rendine, the New Jersey Supreme Court also rejected the view that "all contingent-fee cases should be treated as a class, without distinction based on their specific circumstances." Rendine, 661 A.2d at 1229.

_____

14. Polselli draws our attention to Black Grievance Comm. v. Philadelphia Elec. Co., 690 F. Supp. 1393 (E.D. Pa. 1988). In Black, the district court awarded a 200 percent contingency enhancement in an employment discrimination action. That court followed the reasoning of Delaware Valley II, and it placed special emphasis on Justice O'Connor's concurring opinion in that 4-1-4 decision. Black , 690 F. Supp. at 1398 (citing Delaware Valley II, 483 U.S. at 731 (O'Connor, J., concurring)). The district court found that "the market compensates for contingency cases at a rate of approximately 200% and that it would be significantly more difficult for plaintiffs to obtain counsel willing to handle employment discrimination class actions if plaintiff's counsel had no prospect of receiving a contingency enhancer." Black, 690 F. Supp. at 1401.

While Polselli relies heavily on Black, she fails to mention that in Dague, the Supreme Court expressly rejected Justice O'Connor's concurring opinion in Delaware Valley II, and concluded that a contingency-fee enhancement was never appropriate under the fee-shifting statutes at issue. Dague, 505 U.S. at 563-67. If the district court decided Black today, the court would have concluded that a contingency enhancement was not appropriate in that case.

We are reminded that Third Circuit Local Appellate Rule 28.3(b) provides that for each legal proposition supported by citations in the argument, "counsel shall cite to any opposing authority if such authority is binding on this Court, e.g., U.S. Supreme Court decisions . . . ." 3d Cir. R. 28.3(b) (emphasis supplied).

Trial courts are charged with the duty to attempt to calculate a "reasonable" fee in a particular case. To consider the risk of contingency fee cases as a class skews that calculation. Recognizing the individualized inquiry necessary to the calculation of a "reasonable" fee, we predict that the Pennsylvania Supreme Court would reject the argument that trial courts may enhance a lodestar amount to account for the riskiness of contingency-fee cases as a class.15

Similarly, we predict that the Pennsylvania Supreme Court would not permit trial courts to enhance a lodestar amount to account for the purported riskiness of a more limited class of contingency-fee cases (e.g., insurance cases "as a class" or civil rights cases "as a class"). To the extent that it is permitted at all, enhancement must be based on the specific risks of the specific case.

Polselli also contends that Begier's "contingent-fee billing rate" is approximately double his non-contingent fee billing rate, and that the district court should use his "contingent-fee billing rate" in the calculation of a reasonable fee. This argument ignores the reality of the contingency agreement. By its very nature, contingent litigation entails an

_____

15. In Romano by Romano v. Lubin, 530 A.2d 487 (Pa. Super. Ct. 1987), the Pennsylvania Superior Court reasoned:

    It must also be noted that attorneys often accept cases on a
    contingent fee basis which result in no recovery. The lawyer not
only
    does not get paid, he will lose the money he has advanced the
client

to pay for the costs of the suit. When the court calculates the fee of
a plaintiff 's attorney, it must consider that the very same attorney
may have spent thousands of uncompensated hours working on other cases. A single recovery may constitute the better portion of his yearly income.

Id. at 488. We predict that the Pennsylvania Supreme Court would not agree with this reasoning. Fee-shifting statutes "were not designed as a form of economic relief to improve the financial lot of lawyers." Dague, 505 U.S. at 563 (quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) (Delaware Valley I)). An attorney's inability to obtain fees in unrelated cases should have no bearing on the attorney's "reasonable fee" in the case in which he is successful.

22

agreement whereby a client agrees to pay an attorney a certain percentage of any money recovered by settlement or judgment. It does not entail an agreement whereby a client agrees to pay an attorney a fee of double his non-contingency hourly rate if the plaintiff is successful. Thus, while a reasonable fee is to be calculated "according to the prevailing market rates," Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990), there is "no such thing as a prevailing market rate in contingent litigation." 2 Mary Frances Derfner & Arthur D. Wolf, Court Awarded Attorney Fees P 16.04[4], at 16-140 (rev. ed. 1997). It may be true that an attorney's fee in a contingent-fee case is often mathematically equivalent to twice the fee the attorney would have received if the attorney billed at the attorney's non-contingent regular hourly rate. It does not follow that the attorney's contingent fee "rate" is equal to double the attorney's non-contingent fee "rate."

On remand, the district court may elect to assess attorney's fees against Nationwide for the time Begier spent litigating Polselli's bad faith claim. If it chooses to assess such fees, the court may consider the possibility of enhancing those fees to reflect the contingent risk posed by this particular case. In considering this possibility, the court should not consider any factor already taken into account in calculating the lodestar amount nor should the court consider the risk posed by contingent-fee cases as a class.

IV.

Polselli also contends that the district court may assess fees against Nationwide for the time Begier spent preparing

and litigating the fee petition itself. It is well-settled that under federal law, "the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award." Prandini v. National Tea Co., 585 F.2d 47, 53 (3d Cir. 1978) (explaining that a contrary holding would "not comport with the purpose behind most statutory fee authorizations"); Public Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1190 (3d Cir. 1995) ("legal services rendered in

23

a dispute over the attorneys' fees due a prevailing plaintiff are recoverable under a fee shifting statute").

Pennsylvania courts have carved out a narrow exception to this general rule, concluding that an attorney may not recover fees for time spent preparing and litigating a fee petition when such efforts are directed solely to the benefit of the attorney and not the client. Weidner v. Workmen's Comp. Appeal Bd., 442 A.2d 242, 245 (Pa. 1982). In Weidner, a workmen's compensation claimant had a contingent fee agreement with his attorney whereby there would be no fee if the claimant did not receive an award. Although the attorney successfully resisted suspension of the claimant's benefits, there was no additional award; hence, the attorney was not entitled to any fee from the claimant. When the attorney later successfully pursued statutory fees under the Workmen's Compensation Act, the claimant had no interest in the fee litigation because the outcome of that litigation did not impact the claimant's obligation to pay his attorney. Thus, the attorney was not entitled to recover fees for the time the attorney spent seeking fees on his own behalf. See Allums v. Workmen's Comp. Appeal Bd., 532 A.2d 549, 551-52 (Pa. Commw. Ct. 1987) (discussing Weidner).

Reasonable fees incurred in the course of fee petition preparation and litigation may be recovered, however, as long as the client has a material interest in the fee litigation. Milton S. Hershey Med. Ctr. v. Workmen's Comp. Appeal Bd., 659 A.2d 1067, 1070-71 (Pa. Commw. Ct. 1995); Allums, 532 A.2d at 552 (attorney is entitled to fees when work is on behalf of client's interests).16 We believe

_____

16. In American Mut. Liab. Ins. Co. v. Zion & Klein, P.A., 489 A.2d 259 (Pa. Super. Ct. 1985), the court stated that an award of counsel fees "is not usually intended to include reimbursement for fees and expenses incurred in proceedings to recover such attorney's fees." Id. at 262 (citing Weidner, 442 A.2d 242). Weidner did not stand for this proposition;

rather, the Pennsylvania Supreme Court merely held that an attorney may not recover fees for time spent solely for the benefit of the attorney and not the client. Weidner, 442 A.2d at 245. We predict that the Pennsylvania Supreme Court would choose not to follow Zion & Klein, and would instead adopt the "material interest" test of Milton S. Hershey Medical Center, 659 A.2d at 1070-71.

that a client has a material interest in the outcome of the fee proceedings when those proceedings could affect the client's duty to pay her attorney. See Milton S. Hershey, 659 A.2d at 1070-71. We leave it to the district court to determine whether Polselli had a material interest in the outcome of the fee proceedings. If she did have a material interest in those proceedings, the court may, in its discretion, assess a reasonable attorney's fee for the time Begier spent preparing and litigating the fee petition.17

V.

In Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230 (3d Cir. 1997), the district court denied attorney's fees to a successful section 8371 plaintiff because it believed that the insurer "had been punished enough" by the punitive damages already awarded. Reasoning that punitive damages are awarded to punish the defendant for bad faith, while attorney's fees are awarded to make the successful plaintiff whole, we rejected the district court's explanation. Id. at 236. We declined to remand for assessment of attorney's fees, however, finding that the "district court obviously intended to both punish State Farm and to make the appellant whole, and it believed that the punitive damages award accomplished both." Id.

We are unable to determine whether the district court in this case had the same intention as the district court in Klinger. It appears from its opinions that the district court intended that the punitive damages award serve exclusively to punish Nationwide and that the attorney's fee award serve to compensate Polselli. To the extent that the district court did intend the punitive damages award to both punish Nationwide and make Polselli whole, the court should indicate how much of the punitive damages award was attributed to attorney's fees, and it may reduce the

_____

17. Since the fee petition litigation is separate from the merits litigation,
the court should calculate the fee assessment for this time separately from the fee assessment for the time spent litigating the bad faith claim. In this case, it is highly unlikely that a contingency enhancement would

be appropriate for the time spent preparing and litigating the fee petition.

final assessment of fees accordingly. To avoid the potential confusion we faced in Klinger, courts should specify which portion of the final award is attributable to punitive damages under section 8371(2) and which portion is attributable to attorney's fees under section 8371(3).

VI.

In Hensley v. Eckerhart, 461 U.S. 424 (1983), the Supreme Court stated that "[a] request for attorney's fees should not result in a second major litigation." Id. at 437. In Dague, the Supreme Court noted that permitting contingency enhancement "make[s] the setting of fees more complex and arbitrary, hence more unpredictable, and hence more litigable. It is neither necessary nor even possible for application of the fee-shifting statutes to mimic the intricacies of the fee-paying market in every respect." Dague, 505 U.S. at 566-67. Unfortunately, as in a growing number of cases in both state and federal court, the real issues in this case have been overshadowed by a dispute over attorney's fees. We join the Supreme Court in hoping that future litigants will be able to resolve amicably the amount of a fee. Hensley, 461 U.S. at 437. While the issue of attorney's fees is not necessarily minor, it should remain "ancillary and collateral to the underlying controversy. Thus, [parties] should refrain from making it a major controversy." Windall, 51 F.3d at 1190.

We will remand this case so that the district court may assess attorney's fees in a manner consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit