

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-4-2002

# Dinner v. United Ser Auto Assn

Precedential or Non-Precedential:

Docket 1-1299

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Dinner v. United Ser Auto Assn" (2002). *2002 Decisions.* Paper 145.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/145

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT
PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 01-1299


PAMELA DINNER,

Appellant

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION
CASUALTY INSURANCE COMPANY


On Appeal From The United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil No. 99-cv-04603)
District Judge:  Honorable Robert F. Kelly


Submitted Pursuant to Third Circuit LAR 34.1(a)
January 24, 2002

BEFORE:  BEFORE:  NYGAARD, and STAPLETON, Circuit Judges,
and SLEET, District Judge*

(Opinion filed: February 27, 2002)


_____


*  Honorable Gregory M. Sleet, United States District Judge for the
District of Delaware,
    sitting by designation.

STAPLETON, Circuit Judge:

This is an appeal from a jury verdict finding in part that the United Service Automobile Association Casualty Insurance Company ("USAA") did not act in bad faith in handling plaintiff Pamela Dinner's ("Dinner") claim for underinsured motorist benefits ("UIM"). Specifically, the plaintiff argues that the district court erred in precluding her expert witness from testifying about the applicability of the Unfair Insurance Practice Act ("UIPA"), 40 Pa. Cons. Stat. 1117.1, et seq., or the regulations promulgated thereunder, the Unfair Claims Settlement Practices regulations ("UCSP"), 31 Pa. Code 146.1, et seq. Plaintiff further claims that the District Court erred by rejecting her proposed jury instructions which referenced those provisions.

### Factual and Procedural Background

On May 16, 1994, Dinner was involved in an automobile accident in Sedona, Arizona. As a result of the accident, Dinner sustained a broken right wrist, a dislocated right elbow and an orbital hematoma of her right eye. At the time of the accident, Dinner had an auto insurance policy with USAA, which included underinsured motorist benefits. Dinner promptly notified USAA of her condition.

Two layers of insurance existed in front of USAA, the tortfeasor's and the UIM coverage of the rental vehicle in which the Dinners were riding at the time of the accident. These two layers were paid by September 28, 1995. USAA paid Dinner on September 10, 1997, over three years after Dinner first notified USAA of her claim.

Nearly two years after receiving her settlement check, Dinner filed a claim in federal court asserting diversity jurisdiction and alleging that USAA acted in bad faith within the meaning of 42 Pa. Cons. Stat. 8371. In support of this claim, Dinner offered the expert testimony of Barbara Sciotti. Sciotti intended to testify that Pennsylvania had

adopted a statute, the UIPA, and regulations, the UCSP, that lay out the obligations of
an insurance company in handling claims.  Further, Sciotti intended to testify that
USAA's handling of Dinner's claim violated a number of provisions of the statute and
regulations.  Prior to trial, USSA moved in limine to exclude all of the testimony of
Sciotti under Rule 702 and that portion of her testimony that stated that USAA's conduct
violated the UIPA and the UCSP regulations under Rule 403.

The District Court denied the Rule 702 motion in limine.  The Court warned,
however, that Sciotti's ability to answer fully, would "depend upon [the] . . . questions"
that plaintiff's counsel asked.  Appendix at 328.

With respect to the second part of the motion in limine, Dinner argued that
Sciotti's testimony was relevant because it would inform the jury that insurance
companies have rules that govern "the day-to-day work" and that "carefully prescribe
what they are supposed to do."  Appendix at 324.  In response, USAA argued that the
statute does not give rise to an "independent cause of action," Appendix at 325, and that
the statute states explicitly, that "any of the following acts, if committed or performed
with such frequency as to indicate a business practice, shall constitute unfair claim
settlement or compromise practice."  Appendix at 326 (quoting 31 Pa. Code
  146.1)
(emphasis added).  Further, USAA argued that given the standard for bad faith in
Pennsylvania, "some technical violations under the UIPA . . . shouldn't serve as a basis
for bad faith."  Id.  The District Court agreed with USSA and held,

> the Uniform Insurance Practices Act's requirements are not
> admissible to establish a standard or basis in this case.  I feel
> that no matter what I would say to the jury . . . to limit the
> applicability of those standards, . . . admitting them would far
> outweigh the   or would be far outweighed by the prejudice
> that would accompany them.

Appendix at 327.

During trial, Dinner again raised the question of whether or not her expert could
use the UIPA and UCSP as underpinnings for Sciotti's testimony about USAA's handling
of the claim.  Specifically, Dinner claimed that Sciotti would testify that USAA did not

complete its investigation of the claim within 30 days and did not keep the claimant advised in writing why they had not done so as required by the statute. After considering the arguments of the parties, the Court held:

> In looking at this, in order to prove the case, basically, plaintiff must show that the insurer had no reasonable basis for its decision, and that the insurer knew or recklessly disregarded the absence of a reasonable basis for its decision.
>
> And in doing that, the plaintiff, I assume will rely on various circumstantial evidence to prove what was in the insurer's mind at the time these decisions were being made. And plaintiff would like to rely on these statutory or  or the regulations that have certain standards placed on insurance companies and on the insurance industry in general.
>
> And it is my feeling that  as it was before that pointing to certain arbitrary deadlines, under the circumstances, would give the appearance, in the minds of the jury, far more weight than probative value. And I don't think that an instruction could cure that.  So I'm not going to change my original decision.

Appendix at 400-01.  However, the Court allowed Sciotti to testify as an expert because, as it explained later, "she's probably got a working lifetime experience in what the industry expects as far as processing a claim.  And I think she can probably give her testimony without relying on [the UIPA or UCSP]."  Appendix at 416.

On appeal, Dinner challenges this ruling and the concomitant decision of the District Court to exclude her proposed jury instruction which included language from the UIPA and the UCSP regulations.

### Standard of Review

In reviewing a trial court's decision to admit or exclude expert testimony, we apply the abuse of discretion standard.  See General Elec. Co. v. Joiner, 522 U.S. 136, 142–43 (1997).  Under that standard we will not reverse such a ruling under Rule 403 "unless it is arbitrary and irrational."  Robert S. v. Stetson School, Inc., 256 F.3d 159, 169 (3d Cir. 2001) (citations omitted).  "[A] trial court is in a far better position than an appellate court to strike the sensitive balance dictated by Rule 403.  When a trial court engages in such a balancing process and articulates on the record the rationale for its conclusion, its

conclusions should rarely be disturbed."  Government of the Virgin Islands v. Pinney, 967
F.2d 912, 917–18 (3d Cir. 1992).

When reviewing a jury charge "where the objection is properly preserved, our
inquiry is whether the charge, 'taken as a whole, properly apprises the jury of the issues
and the applicable law."  Smith v. Borough of Wilkinsburg, 147 F.3d 272, 74 (3d Cir.
1998).  "It is the inescapable duty of the trial judge to instruct the jurors, fully and
correctly, on the applicable law of the case, and to guide, direct, and assist them toward
an intelligent understanding of the legal and factual issues involved in their search for
truth."  9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure
  2556 at 438 (2d ed. 1995).

Discussion

In 1981, the Pennsylvania Supreme Court declined to create a common law cause
of action for plaintiffs alleging that their insurance company refused to pay a claim in
"bad faith."  D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 431 A.2d 966 (1981);
Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 529 (3d Cir. 1997) (describing
history).  In 1990, "[i]n what some call a delayed response to D'Ambrosio, the
Pennsylvania legislature enacted 42 Pa. Cons. Stat.   8371 entitled 'Actions on Insurance
Policies,'" which creates a private right of action for "bad faith" claims.  Polselli, 126
F.3d at 529.

In 1994, the Pennsylvania Superior Court defined bad faith and set the standard for
determining whether an insurance company acted in bad faith.  See Terletsky v.
Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994).  The court noted
first that the term "bad faith" had acquired particular meaning in the insurance context:

> "Bad faith" on part of insurer is any frivolous or unfounded
> refusal to pay proceeds of a policy; it is not necessary that
> such refusal be fraudulent.  For purposes of an action against
> an insurer for failure to pay a claim such conduct imports a
> dishonest purpose and means a breach of a known duty (i.e.,
> good faith and fair dealing), through some motive of self-
> interest or ill will; mere negligence or bad judgment is not bad
> faith.

Id. (quoting Black's Law Dictionary 139 (6th ed. 1990)).  The court then went on to

create a two-part standard for evaluating "bad faith" claims: "to recover under a claim of
bad faith, the plaintiff must show [1] that the defendant did not have a reasonable basis
for denying benefits under the policy and [2] that defendant knew or recklessly
disregarded its lack of reasonable basis in denying the claim."  Id.; see also Klinger v.
State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (recognizing the two
part standard in Terletsky).

Prior to Terletsky, the Pennsylvania Superior Court had looked to the UIPA and
the UCSP to give content to the concept of bad faith as used in 42 Pa. Cons. Stat.  8371.
See, e.g., Romano v. Nationwide Mutual Fire Insurance Company, 646 A.2d 1228 (Pa.
Super. 1994).  Terletsky did not, however, and it is apparent from a comparison of the bad
faith standard it adopted with the provisions of the UIPA and the UCSP that much of the
conduct proscribed by the latter is wholly irrelevant to whether an insurer lacks a
reasonable basis for denying benefits and, if so, whether it knew or recklessly disregarded
that fact.

It necessarily follows that a violation of the UIPA or the UCSP is not a per se
violation of the bad faith standard and that it is only the Terletsky standard itself that
allows one to determine whether a violation of the former is of any relevance in a case
like the one before us.  It is also apparent that reference to the fact that the defendant's
conduct violated the UIPA or the UCSP holds the potential for the jury's verdict being
influenced by irrelevant matter.  In these circumstances, it is not surprising to find no
Pennsylvania cases holding that reference to the UIPA or the UCSP in addition to the
Terletsky standard is mandatory.  In the particular circumstances of this case, it was well
within the discretion of the District Court to find that reference to these statutes was
unnecessary and potentially prejudicial and thus to rely solely on the Terletsky standard.

The UIPA prohibits engaging in "unfair methods of competition" or "deceptive
acts or practices" in the business of insurance.  See 40 Pa. Cons. Stat.  1171.4.  The
statute defines "unfair methods of competition" and "unfair or deceptive acts or practices"
to include numerous forms of conduct.  See id. at  1171.5.  Sciotti intended to testify that

USAA violated five statutory provisions.  Most of the acts defined as "unfair methods of competition" and "unfair or deceptive acts or practices" do not have relevance to the question of whether or the insurer had a reasonable basis for denying benefits under the policy and knew or recklessly disregarded its lack of reasonable basis in denying the claim.  See Terletsky, 649 A.2d at 688.  Rather, the majority of the provisions go toward establishing the timing of investigations and payment of claims.  The remaining provisions simply require normal good business practices.  Moreover, to constitute "unfair claim settlement or compromise practices," an insurer has to commit or perform the acts "with such frequency as to indicate a business practice."  Id. at 1171.5(10).

Likewise, the three provisions of the UCSP that Dinner claims USAA violated are not relevant to resolving a dispute of "bad faith" under the Terletsky standard.  Like the statute, these regulations limit the scope of potential violations by requiring that the standards be "violated with a frequency that indicates a general business practice, . . . to constitute unfair claims settlement practices."  31 Pa. Code  146.1 (emphasis added).

Here the trial court allowed Sciotti to testify, as an expert, about the substance of those actions of USAA which she believed were committed in "bad faith."  Sciotti was allowed to testify about a number of instances of perceived misconduct based on her knowledge of the case and the insurance industry.  While she was not allowed to use the UIPA or UCSP as underpinnings for her findings, references to them were not necessary to allow the jury to understand and apply the Terletsky standard and, as the District Court found, would hold a potential for substantial, unfair prejudice to USAA.  The District Court did not abuse its discretion in finding that any relevance of Sciotti's testimony was outweighed by the potential for prejudice to USAA.

For substantially the same reasons, the District Court did not abuse its discretion by refusing to instruct the jury with respect to the provisions of the UIPA and the UCSP.

The judgment of the District Court will be affirmed.

TO THE CLERK:

Please file the foregoing Memorandum Opinion.

/s/ Walter K. Stapleton
                    Circuit Judge