NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3605
_____

PATRICIA YOUNG; WILLIAM YOUNG, III;
PATRICIA YOUNG, on behalf of her minor daughter,
Appellants

v.

PLEASANT VALLEY SCHOOL DISTRICT;
JOHN J. GRESS, Principal, in his individually capacity;
DR. FRANK A. PULLO; BRUCE H. SMITH, JR.
_____

On Appeal from United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. 3-07-cv-00854)
District Judge: Honorable Matthew W. Brann
_____

Argued September 9, 2014
Before: FISHER, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed: February 4, 2015)

Cynthia L. Pollick, Esq. **ARGUED**
The Employment Law Firm
363 Laurel Street
Pittston, PA 18640
        *Counsel for Appellants*

John E. Freund, III, Esq.
Keely J. Collins, Esq. **ARGUED**
King, Spry, Herman, Freund & Faul
One West Broad Street

Suite 700
Bethlehem, PA 18018

Craig D. Ginsburg, Esq.  **ARGUED**
Michael I. Levin, Esq.
Levin Legal Group
1800 Byberry Road
1301 Masons Mill Business Park
Huntingdon Valley, PA 19006,
        *Counsel for Appellees*

_____

OPINION[*]

_____

FISHER, *Circuit Judge*.

A former high school student and her parents challenge a number of unfavorable rulings stemming from (1) their 42 U.S.C. § 1983 equal protection claim against Bruce H. Smith, a former history teacher at Pleasant Valley High School, and (2) their First Amendment retaliation claim against Pleasant Valley School District and three of its employees.  We vacate the District Court's grant of summary judgment in Smith's favor and remand for a new trial, but we affirm the District Court's orders in all other respects.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case.  Therefore, we will set forth only those facts that are necessary to our analysis.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

This dispute originates from 2007. The underlying facts involve a then-16-year-old student, M. Young, and the unorthodox teaching style of her Twentieth Century History teacher, Bruce H. Smith, at Pleasant Valley High School. M. Young found Smith's teaching materials, which frequently involved sexually explicit content and depictions, personally offensive. In March 2007, M. Young's parents, Patricia and William Young, met with Principal John J. Gress to discuss their concerns, after which Smith was immediately suspended and, when later restored to teaching, monitored. The Youngs allege that the Pleasant Valley School District ("School District") improperly disclosed the Youngs' concerns and facilitated student backlash against M. Young and retaliation by Smith.

In May 2007, the Youngs and Patricia Young on behalf of M. Young filed a 42 U.S.C. § 1983 equal protection claim against Smith for creating a sexually-hostile educational environment and a First Amendment retaliation claim against the School District, Principal Gress, and Superintendent Dr. Frank Pullo[1] for retaliating against M. Young after she complained.

At the first trial in August 2011 ("First Trial") before Judge Yvette Kane, the jury returned a verdict against the School District for $200,000 in compensatory damages, and against Smith for $25,000 in compensatory damages and $100,000 in punitive damages. After the First Trial, however, Judge Kane granted the Appellees' motion for a new trial

_____

[1] Dr. Pullo was released as a defendant before the First Trial pursuant to a summary judgment motion granted in his favor.

3

and remitted the damages awarded based on the following findings: (1) the verdicts on the First Amendment retaliation claim finding against the School District but not against Principal Gress were inconsistent; (2) the verdict on the hostile educational environment claim was against the weight of the evidence; and (3) there was a reasonable probability of prejudicial misconduct by the Youngs' counsel.

Several months before the scheduled July 2013 trial ("Second Trial"), Judge Matthew Brann, now presiding over the case, granted Smith leave to move for summary judgment and then granted his motion, dismissing Smith as a defendant along with the hostile educational environment claim. At the Second Trial, Judge Brann directed the jury to render a verdict in favor of the School District on the First Amendment retaliation claim, and the jury found in favor of the School District and Principal Gress on all other claims. The Youngs brought this appeal.

## II.

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331, and this Court exercises appellate jurisdiction pursuant to 28 U.S.C. § 1291. We address each issue on appeal, along with our standard of review, below.

## III.

## A.

The Youngs first allege that the District Court erred by granting Dr. Pullo's summary judgment motion on the First Amendment retaliation claim before the First

4

Trial. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We exercise plenary review over the District Court's grant of summary judgment. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).

The Youngs contend that Superintendent Pullo retaliated against M. Young by allowing Smith's substitute to show a videotaped lesson related to the Pentagon Papers whistleblower, which the Youngs allege was an attempt to intimidate M. Young by Smith. However, because the Youngs presented no evidence connecting Dr. Pullo to the video or to the oversight of Smith's materials in general, the District Court did not err by granting Dr. Pullo judgment as a matter of law.

### B.

Second, we decide whether the District Court properly granted the Appellees' motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure. To review an order granting a new trial based on prejudicial misconduct by counsel, we apply an abuse of discretion standard. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 206 (3d Cir. 1992).

Judge Kane cataloged an extensive record of misconduct by the Youngs' counsel throughout the First Trial, finding that the counsel attempted to inflame the jury by repeatedly asking improper questions and characterizing the evidence. *See* App. 64-71. We agree that such misconduct permeated the trial, *United States v. Riley*, 621 F.3d 312,

5

339 (3d Cir. 2010), making it "reasonably probable" that the misconduct prejudicially influenced the verdict, *Fineman*, 980 F.2d at 207 (internal quotation marks omitted). We conclude, therefore, that the District Court did not abuse its discretion by granting a new trial on this basis.

## C.

Third, we determine whether the District Court erred by granting Smith leave to file a renewed summary judgment motion on the hostile educational environment claim and, thereafter, granting the motion in his favor. We review the former for abuse of discretion, *see Krueger Assocs., Inc. v. Am. Dist. Tel. Co. of Pa.*, 247 F.3d 61, 65-66 (3d Cir. 2001), and the latter de novo, *McGreevy*, 413 F.3d at 363.

Judge Brann did not violate the "law of the case" doctrine[2] by granting Smith leave to file a renewed summary judgment motion—even though Smith's summary judgment motion was denied before the First Trial—because the District Court benefited from the fuller record established at trial. This is an oft-recognized reason for reconsideration. *See, e.g.*, *Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191, 208 (3d Cir. 2010).

On the other hand, Smith was not entitled to judgment as a matter of law on the Youngs' hostile educational environment claim. To violate Title VII of the Civil Rights

---

[2] "As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).

6

Act of 1964,[3] the environment must be "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment . . . .'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). This is determined "only by looking at all the circumstances," *id.* at 23, with an "appropriate sensitivity to social context," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998). The environment must be "both objectively and subjectively offensive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Applying these standards to the educational context, and considering the circumstances in totality, a reasonable jury could have found that Smith created a hostile educational environment. Over the course of one semester, a classroom filed with sixteen- and seventeen-years-old students was regularly subjected to references to sex and graphic depictions of nudity and violence that degraded women. Such a classroom environment could make a reasonable female teenager feel uncomfortable, and it did in fact cause M. Young discomfort to the point of nausea according to her testimony. Because the Youngs presented sufficient evidence to create a genuine issue of fact for trial, we vacate the District Court's grant of summary judgment and remand for a new trial.

---

[3] The District Court adopted Title VII "hostile environment" standards for determining whether a hostile educational environment exists under § 1983. We assume for purposes of this appeal that Title VII standards govern in this case.

D.

The Youngs next argue that the District Court abused its discretion in connection with the Second Trial by (1) removing persons connected to the educational field as potential jurors; (2) excluding from evidence Smith's explicit teaching materials under Rule 403 of the Federal Rules of Evidence for unfair prejudice; (3) excluding from evidence testimony of the School Board President under Rule 401 of the Federal Rules of Evidence as irrelevant; and (4) issuing a jury instruction on First Amendment retaliation that closely tracked the Third Circuit's Model Instruction 7.4, but did not include the Youngs' desired language.

We affirm all four of the District Court's decisions. First, the District Court properly exercised its discretion by restricting the pool to ensure an impartial jury was impaneled, since persons with jobs in the education field could potentially be biased against either party. Second, it was reasonable for the District Court to find that the probative value of Smith's materials was substantially outweighed by unfair prejudice, given that the materials would not make the School District's alleged retaliation any more or less likely, while their graphic nature would likely inflame the jury.[4] Third, it was reasonable for the District Court to find that the School Board President's testimony was

---

[4] In connection with the new trial against Smith, of course, the weighing of probative value and potential for unfair prejudice would have to be undertaken anew, if evidence is objected to on the basis of Federal Rule of Evidence 403, because what is to be proved will be different from that which was at issue in the suit against the School District.

irrelevant, given that she had no knowledge of the Youngs' complaint, Smith's suspension, or personnel matters at the high school. And finally, despite its alleged omissions, the jury instruction, "taken as a whole, . . . properly apprised the jury of the issues and the applicable law." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 (3d Cir. 2009).

## E.

Also in connection with the Second Trial, the Youngs contend that the School District's counsel prejudicially influenced the jury when he alleged during closing argument that the Youngs were only after money. Because "a single isolated inappropriate comment" does not permeate the trial, *Riley*, 621 F.3d at 339, the defense counsel's alleged misconduct does not warrant the grant of a new trial.

## F.

Finally, the Youngs assert that the District Court erred by directing a verdict in favor of the School District at the Second Trial. We exercise plenary review over the District Court's grant of a directed verdict. *See St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991). "A directed verdict is appropriate only where the evidence, when viewed in a light most favorable to the party opposing the motion, is insufficient for a reasonable jury to find in favor of the opposing party." *Id.*

Here, the Youngs did not present sufficient evidence to allow a reasonable jury to conclude that the School District's alleged retaliatory acts were committed pursuant to an

official policy or custom, as is required to establish § 1983 municipal liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Accordingly, the directed verdict was appropriate.

## IV.

For the reasons set forth above, we vacate the District Court's grant of summary judgment in Smith's favor and remand for a new trial, but we affirm the District Court's orders in all other respects.

HARDIMAN, *Circuit Judge*, dissenting.

I join the majority's opinion for the panel in all respects save one: I would affirm the District Court's summary judgment in favor of Smith on Young's Fourteenth Amendment Equal Protection claim, which is based on a sexually hostile environment.

As my colleagues note, Young was personally offended by Smith's "unorthodox teaching style," Maj. Typescript at 2-3, so there is no dispute that she satisfied the subjective component of her claim. The question is whether Young satisfied the objective component, which requires that a reasonable person would agree that the conduct is "objectively severe or pervasive." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205 (3d Cir. 2001). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). The purpose of this demanding standard is to "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Id.* (quoting Barbara Lindemann & David Kadue, *Sexual Harassment in Employment Law* 175 (1992)).

Only an environment "'permeated with discriminatory' intimidation, ridicule, and insult" will satisfy the onerous standard for a hostile environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Relevant factors include: "the frequency of the discriminatory

1

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The social context of alleged sexual harassment is also an important factor. For example, the Supreme Court has noted that a football coach does not create a hostile environment by slapping a player on the buttocks, even though the same behavior would be abusive in an office setting. *Oncale*, 523 U.S. at 81 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" fall short of the sexually hostile environment threshold. *Faragher*, 524 U.S. at 788 (internal quotation marks and citation omitted). The Supreme Court has emphasized that the "conduct must be *extreme*[.]" *Id*. (emphasis added).

Though the majority correctly describes the demanding standard to establish a sexually hostile environment, it backslides when applying that standard. The majority concludes that Smith's classroom environment could make a female teenager "feel uncomfortable" and could cause "discomfort." Maj. Typescript at 7. But that is not enough, as the District Court's thorough analysis makes clear. *See Young v. Pleasant Valley Sch. Dist.*, 2012 WL 1827194, at *12–*16 (M.D. Pa. May 18, 2012). I find no error in the District Court's opinion, and the majority has not explained where the District Court went astray. Accordingly, I would affirm the judgment in its entirety.

2