**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3150
_____

BERNIE CLEMENS;
NICOLE CLEMENS,
                    Appellants

v.

NEW YORK CENTRAL MUTUAL FIRE
INSURANCE COMPANY,
And/Or NYCM Insurance Group
And/Or NYCM Holdings, Inc.
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. Action No. 3-13-cv-02447)
District Judge: Honorable Malachy E. Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 18, 2018
_____

Before: GREENAWAY, JR., RESTREPO, and BIBAS,
*Circuit Judges*.

(Opinion Filed: September 12, 2018)

James C. Haggerty
Haggerty Goldberg Schleifer & Kupersmith
1835 Market Street, Suite 2700
Philadelphia, PA 19103

Michael R. Mey
Mey & Sulla
1144 East Drinker Street
Dunmore, PA 18512

Michael J. Pisanchyn
Pisanchyn Law Firm
524 Spruce Street
Scranton, PA 18503
                    *Counsel for Appellants*


Charles E. Haddick, Jr.
Dickie McCamey & Chilcote
425 North 21st Street
Plaza 21, Suite 302
Camp Hill, PA 17011
                    *Counsel for Appellee*

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

After a jury awarded him $100,000 in punitive damages under the Pennsylvania Bad Faith Statute, 42 Pa. Cons. Stat. § 8371, Appellant Bernie Clemens submitted a petition for over $900,000 in attorney's fees from Appellee New York Central Mutual Fire Insurance Company ("NYCM"). The District Court denied this petition in its entirety, reasoning that it was not adequately supported and that the requested amount was grossly excessive given the nature of the case. Finding no abuse of discretion, we will affirm and, in doing so, take the opportunity to formally endorse a view already adopted by several other circuits—that is, where a fee-shifting statute provides a court discretion to award attorney's fees, such discretion includes the ability to deny a fee request altogether when, under the circumstances, the amount requested is "outrageously excessive." *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980); *see also, e.g.*, *Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258–60 (D.C. Cir. 1993); *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993); *Lewis v. Kendrick*, 944 F.2d 949, 956–58 (1st Cir. 1991).

## I. BACKGROUND

Dissatisfied with NYCM's handling of his insurance claim related to a serious car accident, Clemens filed suit against the company in the Court of Common Pleas of Monroe County, asserting a contractual underinsured motorist ("UIM") claim and a claim under the Bad Faith Statute, 42 Pa. Cons. Stat. § 8371. After NYCM removed the case to federal court, the parties settled the UIM claim for $25,000. The bad faith claim, meanwhile, proceeded to a week-long trial, at the

3

conclusion of which a jury found that NYCM had acted in bad faith in its handling of the insurance claim and awarded Clemens $100,000 in punitive damages.

As the prevailing party under the Bad Faith Statute, Clemens then submitted a petition for attorney's fees, in which he requested an award of $946,526.43 in fees and costs.[1] The District Court denied this request in its entirety, however. In a thorough and well-reasoned one-hundred-page opinion, the court reviewed every time entry submitted, performed a traditional lodestar analysis, and concluded that eighty-seven percent of the hours billed had to be disallowed as vague, duplicative, unnecessary, or inadequately supported by documentary evidence. In light of that substantial reduction, the District Court deemed Clemens's request "outrageously excessive" and exercised its discretion to award no fee whatsoever. App. 649. Represented by new counsel, Clemens now appeals.[2]

---

[1] Clemens's petition also sought $175,630 in interest on his claims. The District Court concluded that the Bad Faith Statute allowed Clemens to recover interest on only the $25,000 in UIM damages, though. The court therefore awarded interest in the amount of $4,986.58. Clemens does not appeal that determination.

[2] Alone on the brief for Clemens in this Court is James C. Haggerty. He did not enter an appearance in the District Court, and the record reveals no involvement on his part below. Lead counsel for Clemens in the District Court was Michael J. Pisanchyn of the Pisanchyn Law Firm.

4

## II. JURISDICTION

The District Court had jurisdiction under 28 U.S.C. § 1332(a), and we have jurisdiction under 28 U.S.C. § 1291.

## III. DISCUSSION

The Pennsylvania Bad Faith Statute provides that

[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371. Because the statute uses the word "may," the decision to award attorney's fees and costs "upon a finding of bad faith is wholly within the discretion of the trial court." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 534 (3d Cir. 1997). We will not disturb that decision absent an abuse of discretion. *Id.* at 534 & n.13.[3]

---

[3] Clemens argues that, because the Bad Faith Statute says that the court "may take *all* of the following actions," rather than "may take *any*," the award of attorney's fees is

5

In exercising their discretion under the statute, courts are guided by Pennsylvania Rule of Civil Procedure 1717, which provides that the relevant considerations include "the time and effort reasonably expended;" "the quality of the services rendered;" "the results achieved and benefits conferred upon the class or upon the public;" "the magnitude, complexity and uniqueness of the litigation;" and "whether the receipt of a fee was contingent on success." *See Polselli*, 126 F.3d at 532 (discussing Pennsylvania Rule of Civil Procedure 1716, which was subsequently renumbered as Rule 1717).

Like with federal fee-shifting statutes, the calculation of an attorney's fee award under Rule 1717 begins with the lodestar method: the multiplication of the actual number of hours spent in pursuing the claim by a reasonable rate.[4] *Birth*

---

mandatory whenever punitive damages are awarded. Even if we were to find this interpretation compelling, as it is a matter of state law, we look first to the Pennsylvania Supreme Court, which has rejected the argument, *see Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 376 (Pa. 2017).

[4] Because the calculation of a fee award involves the lodestar method under both Rule 1717 and federal fee-shifting statutes, many of the decisions cited in the impending discussion involve federal fee-shifting statutes that, like the Pennsylvania Bad Faith Statute, leave the decision to award attorney's fees and costs to the discretion of the trial court. Although the Bad Faith Statute differs from some of those federal statutes in that it does not expressly provide that the fee award must be "reasonable," *compare* 42 Pa. Cons. Stat. § 8371 *with, e.g.*, 42 U.S.C. § 1988(b) *and* 5 U.S.C. § 552(a)(4)(E), Rule 1717 effectively incorporates a reasonableness standard into the Bad Faith Statute by stating

*Ctr. v. St. Paul Cos., Inc.*, 727 A.2d 1144, 1160–61 (Pa. Super. 1999)*, abrogated on other grounds by Mishoe v. Erie Ins. Co.*, 824 A.2d 1153, 1156–57 & n.3 (Pa. 2003); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.").

Under the lodestar method, "[t]he party seeking attorney's fees has the burden to prove that its request . . . is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "When the applicant for a fee has carried [its] burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)). But courts "have a positive and affirmative function in the fee fixing process, not merely a passive role." *Id.* "In calculating the hours reasonably expended, a court should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are "excessive, redundant, or otherwise unnecessary."'" *Id.* (quoting *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)).

---

that "the time and effort reasonably expended" is a relevant consideration. Thus, absent any indication that the standards guiding courts' discretion are markedly different in the context of the Bad Faith Statute, we think decisions involving similar federal statutes are germane to our analysis.

As noted above, the District Court's lodestar calculation here reduced Clemens's requested fee by eighty-seven percent. After making that reduction, the court then decided to award no fee at all in light of the excessive nature of the request.

Although it was unusual, we cannot say that this decision was an abuse of discretion. Review of the record and the District Court's comprehensive opinion makes clear that denial of a fee award was entirely appropriate under the circumstances of this case. Counsel's success at trial notwithstanding, the fee petition was severely deficient in numerous ways.

As a starting point, counsel did not maintain contemporaneous time records for most of the litigation. Instead, by their own admission, counsel "recreate[d]" all of the records provided as part of the fee petition, using an electronic case management system that did not keep track of the amount of time expended on particular tasks. App. 503. Even worse, the responsibility of reconstructing the time records was left to a single attorney, who retrospectively estimated not only the length of time she herself had spent on each individual task, but also the amount of time others had spent on particular tasks, including colleagues who could not be consulted because they had left the firm by the time the fee petition was filed.[5] We have never strictly required that fee

_____

[5] Astonishingly, counsel then attempted to recover attorney's fees in the amount of $27,090 for the 64.5 hours it supposedly took to reconstruct the time records. *See* App. 41, 51. The District Court did not abuse its discretion in disallowing those 64.5 hours altogether, as it is not NYCM's

8

petitions be supported by contemporaneous records, but they have long been "the preferred practice." *Keenan v. City of Phila.*, 983 F.2d 459, 472 (3d Cir. 1992) (quoting *Webb v. Bd. of Educ. of Dyer Cty.*, 471 U.S. 234, 238 n.6 (1985)). Thus, although reconstructed records in and of themselves do not justify complete disallowance of a fee award, they may warrant "more exacting scrutiny than we would bring to contemporaneous and detailed records." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984).

Here, it does not even require added scrutiny to discover further problems with the fee petition. For one, many of the time entries submitted were so vague that there is no way to discern whether the hours billed were reasonable. Counsel's time records included, for instance, entries billing for attorney services described as "Other," "Communicate," or "Communicate-other." *E.g.*, App. 327, 329, 336, 338, 342–43. Similarly, the fee petition included a number of entries for "Attorney review," "Analysis/Strategy," or "Review/analyze" with no additional explanation regarding the subject or necessity of the review. *E.g.*, App. 300–07, 331, 334–35, 338, 347. We are mindful of confidentiality obligations, but time entries still must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Phila. Cty. Ct. of Com. Pl.*, 89 F.3d 1031, 1037 (3d Cir. 1996) (internal quotation marks omitted) (quoting *Keenan*, 983 F.2d at 472). These entries, as well as many others, were nowhere near specific enough.

---

responsibility to pay for the consequences of counsel's own neglect.

9

In addition to the vague entries, some entries were, on their face, unnecessary or excessive. For example, over the course of one week, and at the same time counsel were billing for trial preparation, counsel billed a total of sixty-four hours for "Transcripts/clips." *See* App. 360. Whatever this means, we are confident that it was not necessary to spend sixty-four hours on it given the straightforward nature of the case. Of a similar vein are the frequent entries that requested attorney rates for "File maintenance," "File management," and "Document management," *e.g.*, App. 330–34, 336, 338–42, some of which were for as long as seven hours in a single day. App. 333, 336. Without more information, these tasks appear "purely clerical" in nature and should not be billed at a lawyer's rate—nor for many hours at a time. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989).

Then there are the staggering 562 hours that counsel billed for "Trial prep" or "Trial preparation" with no further description of the nature of the work performed. *See* App. 358–63. We agree with the District Court that this is an "outrageous" number under the circumstances. App. 630. As the District Court put it, "[i]f counsel did nothing else for eight hours a day, every day, [562 hours] would mean that counsel spent approximately 70 days doing nothing but preparing for trial in this matter." App. 630. Yet the trial consisted of only four days of substantive testimony, and involved a total of only five witnesses for both sides. The sole issue was whether NYCM had acted in bad faith in its handling of Clemens's UIM claim. Counsel certainly have an obligation to be prepared, but we simply cannot fathom how they could have *reasonably* spent such an astronomical amount of time preparing for trial in this case, and we highly doubt they would have billed their own client for all of the hours claimed, *see Maldonado*, 256

10

F.3d at 184 ("Hours that would not generally be billed to one's own client are not properly billed to an adversary." (quoting *Pub. Interest Research Grp.*, 51 F.3d at 1188)).

All the more troubling is the fact that counsel's (supposedly) hard work did not appear to pay off at trial. As the District Court explained, counsel had "to be repeatedly admonished for not being prepared because he was obviously unfamiliar with the Federal Rules of Evidence, the Federal Rules of Civil Procedure and the rulings of th[e] court." App. 630 (emphasis omitted). Given counsel's subpar performance and the vagueness and excessiveness of the time entries, the District Court did not abuse its discretion in disallowing all 562 hours.

Aside from the problems with the hours billed for individual tasks, counsel also neglected their burden of showing that their requested hourly rates were reasonable in light of the prevailing rates "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado*, 256 F.3d at 184 (quoting *Rode*, 892 F.2d at 1183). Indeed, counsel bore "the burden of establishing by way of satisfactory evidence, in addition to [their] own affidavits, . . . that the requested hourly rates [met] this standard." *Id.* (omission in original) (internal quotation marks omitted) (quoting *Washington*, 89 F.3d at 1035). Here, the five billing attorneys did not even submit their own affidavits identifying their usual billing rates or describing their levels of experience. And only one of the five attorneys testified at the hearing on the fee petition about her background and experience. Thus, for four of the five billing lawyers, including lead trial counsel, the District Court was provided no information whatsoever on which it could make a

11

determination as to whether the requested hourly rate was reasonable.

The District Court would have liked to disallow any hours billed by those four lawyers, *see* App. 646–47, and it would have been within the court's discretion to do so. But the court was not able to because the fee petition did not indicate which attorney performed each particular task. The District Court therefore disallowed all hours billed prior to the one testifying lawyer's arrival at the firm, those billed for multiple attorney "roundtables," and all trial hours billed by more than one lawyer. App. 647 n.62. Other than those hours, however, the court gave counsel the "benefit of the doubt" and assumed that the one testifying lawyer had performed all of the hours billed after she had joined the firm that had not already been disallowed for some other independent reason. App. 646.

As a result, the District Court's lodestar calculation, if anything, overestimated the amount of hours to which counsel were entitled. And still, the court concluded—based on the disallowances described above, as well as other reductions— that counsel were entitled to only thirteen percent of the fees they requested. The court thus found the request "outrageously excessive" and exercised its discretion to award no fee at all. App. 649.

Although we have never had the opportunity to formally endorse such an approach, other circuits have, holding that district courts have the discretion to deny a fee request in its entirety when the requested amount is "outrageously excessive" under the circumstances. *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980); *see also, e.g.*, *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 556–59 (5th Cir. 1998), *abrogated on other grounds as recognized in*

12

*Bailey v. Mississippi*, 407 F.3d 684, 686–87 (5th Cir. 2005); *Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258–60 (D.C. Cir. 1993); *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993); *Lewis v. Kendrick*, 944 F.2d 949, 956–58 (1st Cir. 1991).[6]

Underlying these decisions is the idea that if courts did not possess this kind of discretion, "claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first place." *Landow*, 999 F.2d at 96 (quoting *Stackler*, 612 F.2d at 1059). We find this rationale persuasive. When a party submits a fee petition, it is not the "opening bid in the quest for an award." *Id.* at 97 (citing *Kendrick*, 944 F.2d at 98). Rather, it is the duty of the requesting party to "make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Here, the District Court provided a thorough explanation of how counsel failed to fulfill their duty to the court. This failure, coupled with the other deficiencies in the petition and counsel's substandard performance, justified the District Court's decision to deny the fee request in its entirety. That decision was not an abuse of discretion.

---

[6] These decisions involve federal fee-shifting statutes, but for the reasons provided above, *see supra* note 4, we think their reasoning applies with equal force here.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court.