**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 17-3190, 17-3201
_____

MEGAN YOUNG

v.

BRUCE H. SMITH, JR.


MEGAN YOUNG;
*CYNTHIA L. POLLICK, ESQ.,
Appellants
*(Pursuant to Rule 12(a), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-07-cv-00854)
District Judge: Honorable Matthew W. Brann
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
on May 21, 2018
_____

Before: McKEE, SHWARTZ ansd COWEN, <u>Circuit Judges</u>.

(Opinion Filed:  September 25, 2018)
_____

Cynthia L. Pollick
363 Laurel Street
Pittston, PA 18640
       *Counsel for Appellant*

John E. Freund, III
Keely Jac Collins
King Spry Herman Freund & Faul, LLC
One West Broad Street, Suite 700
Bethlehem, PA 18018
    *Counsel for Appellee*

————————

OPINION

————————

McKEE, <u>Circuit Judge</u>.

Appellant Cynthia Pollick appeals the District Court's order denying her fee petition, imposing sanctions in the aggregate amount of $25,000, and referring Pollick to the Disciplinary Board of the Supreme Court of Pennsylvania for unethical billing practices. Pollick submitted her petition for fees and costs that she claimed arose from her representation of plaintiffs in a civil rights suit that resulted in two trials and a settlement agreement. The first trial resulted in a favorable verdict for Pollick's clients but was vacated due to Pollick's own misconduct; the second trial ended with a complete defense verdict for one of the defendants. A third trial, against the remaining defendant, was avoided because Pollick's clients accepted a Rule 68 settlement offer. For the reasons that follow, we will affirm.

## I. BACKGROUND

Pollick represented a group of students who brought various civil rights claims against a school district and a teacher. During the first trial on those claims, Pollick made numerous statements that the Court subsequently found were aimed at inflaming the jury. The jury returned a verdict for Pollick's clients. However, that verdict was a pyrrhic victory because the trial court entered an order vacating the judgment and awarding a new trial based upon Pollick's misconduct.[1] Specifically, the Court found that Pollick had "repeat[ed] outrageous conduct" enough times that the jury would believe

———————————

[1] *Young v. Pleasant Valley Sch. Dist.*, No. 07-CV-00854, 2012 WL 1827194, at *27-29 (M.D. Pa. May 18, 2012).

2

her allegations as fact.[2]   In affirming that order, we subsequently explained that the District Court had "cataloged an extensive record of misconduct by [Ms. Pollick] throughout the [trial]" and it was therefore "'reasonably probable' that the misconduct prejudicially influenced the verdict."[3]

The second trial was only against the school district. That trial resulted in a complete defense verdict.  Before a third trial – which would have involved only the teacher – could begin, the teacher tendered a Rule 68 offer of judgment for $25,000, which Pollick's clients accepted.  That settlement allowed for "reasonable attorneys' fees and costs as to the claims against [the teacher] only, up until the date of [the] offer."[4]   Despite the express limitations of the settlement, Pollick submitted a fee petition requesting fees and costs purportedly incurred while representing her clients against both the school district and the teacher.  The petition also included fees and costs for work on the second trial in which Pollick's clients were not the prevailing party and therefore not entitled to recover fees or costs, absent circumstances not found here.  As noted, the total amount of the recovery from the teacher via the settlement was $25,000.  Yet, Pollick submitted a fee petition in the amount of $733,002.23.

Not surprisingly, the District Court scheduled a hearing on the petition and ordered Pollick to show cause why she should not be sanctioned for seeking "fees and costs for portions of the litigation that were necessitated by her own vexatious conduct, as against defendants that she ultimately did not prevail, for certain expenses previously held unrecoverable by judges of this Court, and relative to the total settlement of $25,000[.]"[5]

---

[2] *See id*. at *29.
[3] *Young v. Pleasant Valley Sch. Dist.,* 601 F. App'x 132, 135 (3d Cir. 2015) (quoting *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 207 (3d Cir. 1992)).
[4] A304.  Citations to the appellate record appear with the letter "A" followed by the page number.
[5]*See Young v. Smith*, 269 F.Supp. 3d 251, 345 (M.D. Pa. 2017).

3

At the show cause hearing, Pollick proffered the rather remarkable, and utterly ridiculous argument that she could submit whatever bill she chose and that it was the job of opposing counsel and the Court to ferret out entries that were invalid or unreasonable.[6] She also declined an invitation from the Court to submit an amended fee petition.[7] To no one's great surprise (with the possible exception of Ms. Pollick), the Court disagreed with her approach to fee petitions, rejected her argument, and imposed sanctions.[8]

The Court noted that the fee petition was single-spaced, in either 6 or 8-point font that consumed forty-four pages and included hundreds of inappropriate, unethical entries that would likely be illegal if billed to a client.[9] Nevertheless, the Court initially went above and beyond the call of duty and undertook the daunting task of a line-by-line review. Not surprisingly, the Court eventually capitulated after concluding that such a review was a total waste of time, as well as unwarranted and inappropriate given Pollick's persistent misconduct.[10,11]

---

[6] *Id*. at 263.

[7] *Id*. at 262.

[8] As may have been predicted from Ms. Pollick's pattern of conduct, the hearing did not go well for her. The District Court described the experience as follows: "I was transported to a universe devoid of legal principles and fundamental notions of relevance. Ms. Pollick's strange and obstreperous conduct at the hearing also flaunted any semblance of propriety and decorum in federal court[.]" *Id*.

[9] *Id*. at 259. (This is an example of 8-point font, and this is an example of 6 point font).

[10] *Id*. at 264, 267.

[11] The Court explained, "[the] shortcoming here is not one that can be ameliorated by careful, line-by-line revisions. I attempted to give Ms. Pollick the benefit of the doubt and pursue such an approach at first. However, I soon discovered that this method was fool's errand . . . nearly every one of her thousands of entries needs to be eliminated or refined." *Id*. at 263. The Court also noted that defense counsel tried to revise the petition as well, but "gave up after billing approximately one hundred hours on the task and simply began crossing out entire pages … My experience was the same." *Id*. To illustrate the point, the Court even included defense counsel's

4

A brief sampling of the content of the fee petition illustrates why the Court was so exasperated. Pollick requested attorney's fees for the first trial even though the verdict was vacated because of her own misconduct. She requested attorney's fees for the second trial even though it resulted in a complete defense verdict and her clients were therefore not the prevailing party. A further example of the egregiousness of her conduct is the fact that, even though the settlement limited recovery to fees and costs arising only from her claims against the teacher, Pollick requested fees and costs for the second trial, which only involved the school district.[12]

As if all of that were not sufficiently offensive and unprofessional conduct to support sanctions, the District Court also found that hundreds of entries in the fee petition were not merely unreasonable or inaccurate but were actually fraudulent. The District Court concluded that, "even if it took [Pollick] one minute to read an email and one minute to respond back (two minutes total), she has billed all of those communications (hundreds of times over) in two separate six-minute increments. Such practice essentially pads her time in ten-minute increments (12 minutes versus two minutes)."[13] The Court also noted that, less than five months prior to the instant petition, Pollick had been warned against filing such fee petitions by two other district court judges.[14]

Following the hearing, the Court denied Pollick's fee petition in its entirety, issued concurrent $25,000 sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, and referred her inappropriate billing practices to the Pennsylvania Supreme Court's Disciplinary Board.[15] Pollick appeals.

---

failed attempt to revise the petition to its opinion as Appendix B. *Id.*

[12] *Id.* at 260.

[13] *Id.*

[14] *See Souryavong v. Lackawanna Cnty.*, 159 F.Supp. 3d 514, 525-42 (M.D. Pa. 2016); *Carroll v. Clifford Twp.*, No. 3:12-CV-0553, 2014 WL 2860994, at *3-5 (M.D. Pa. June 23, 2014), *aff'd*, 625 F. App'x. 43, 46 (3d Cir. 2015).

[15] The District Court described the show cause hearing on the reasonableness of Pollick's fee petition as "perhaps the

## II.    DISCUSSION

Pollick alleges eighteen separate errors by the District Court.  Collectively, these claims challenge the denial of her fee petition as a whole, the amount and imposition of her sanction, and the referral to the Disciplinary Board.  The District Court issued a scathing 136-page opinion detailing Pollick's misconduct, the innumerable problems with the fee petition, the many warnings Pollick has received in other cases for the same misconduct, our prior non-precedential opinions affirming those decisions, and the need for a severe sanction here.  After reviewing the District Court's thorough explanation for the challenged order, the other judicial decisions citing similar misconduct by Pollick, and our decisions affirming those rulings, it is clear that the District Court did not abuse its discretion in denying Pollick's fee petition in its entirety, imposing the $25,000 sanctions, and referring her to the Disciplinary Board.[16]

### A.  Whether the Court properly denied the entire fee petition

The District Court found that the fee petition contained so many inappropriate billing entries and that its deficiencies were so widespread that a line-by-line reduction would be "infeasible, inaccurate, and would further waste the public's resources."[17]    The Court also found that Pollick's billing misconduct, the inconsiderate font size, her refusal to amend

---

strangest show cause hearing in my tenure with this [c]ourt." *Young*, 269 F.Supp. 3d at 262.

[16] We have plenary review over whether the District Court applied the correct legal standard to its award of attorney's fees. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990).  But we review the reasonableness of the District Court's refusal to award attorney's fees and costs for abuse of discretion.  *Id*.  A district court abuses its discretion when its "decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'"  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006) (quoting *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993)).

[17] *See Young*, 269 F.Supp. 3d at 277.

her fee petition to correct inappropriate billing, and her exorbitant billing rate all warranted denial of the fee petition *in toto*.[18]

Under 42 U.S.C. § 1988(b), in any civil rights action, a district court, "*in its discretion*, may allow the prevailing party" reasonable attorney's fees.[19] However, a court also has the discretion to deny attorney's fees to a prevailing party based upon counsel's misconduct.[20] Moreover, a court may *sua sponte* reduce requested fees with respect to matters within the judge's personal knowledge.[21]

Federal Rule of Civil Procedure 11 requires attorneys to be careful and scrupulously honest in their filings and representations to the court. Therefore, it is absolutely imperative that attorneys submit honest and accurate fee petitions.[22] Courts have discretion to completely strike fee petitions submitted in violation of Rule 11.[23]

Here, the litany of misconduct that the District Court cataloged justified striking her entire fee petition under Rule 11. It is impossible to read the District Court's Memorandum

---

[18] *See id*. at 259-65.

[19] *See* 42 U.S.C. § 1988(b) (emphasis added).

[20] *See Hall v. Borough of Roselle*, 747 F.2d 838, 841-42 (3d Cir. 1984); *see also Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 96 (4th Cir. 1993) (permitting denial of fees where request "so excessive it shocks the conscience of the court."); *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991); *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).

[21] *McKenna v. City of Phila.*, 582 F.3d 447, 459 n.13 (3d Cir. 2009) ("[A]warding of an attorney's fee is a judicial action and, regardless of the parties' indifference to it, a court need not lend its *imprimatur* to an inappropriate order merely because there was no objection to its entry [by the opposing party]"); *Bell v. United Princeton Prop., Inc.*, 884 F.2d 713, 718-19 (3d Cir. 1989).

[22] *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Hall*, 747 F.2d at 842.

[23] *See* FED. R. CIV. P. 11(b) and accompanying advisory notes.

Opinion and not conclude that the Court believed that Pollick's billing entries and practices fall somewhere between gross negligence and outright fraud. The Court concluded that hours were padded and rates were inflated. The Court also concluded that Pollick billed for work she could not be compensated for under the Settlement Agreement as well as time spent on the second trial in which her clients were not even the prevailing party.

We have clearly stated (although it should not be necessary to emphasize the proposition) that "members of the bar are quasi-officers of the court and they are expected to be careful and scrupulously honest in their representations to the court."[24] The District Court's meticulous opinion paints a picture of an attorney whose attitude toward billing and the court is cavalier in the extreme and whose conduct and demeanor bear no relationship whatsoever to an attorney's obligations to the court. Pollick responded to the District Court's rejection of her fee petition by insisting that she had no responsibility to be accurate (or even careful) in her billing because, in her view, it was up to opposing counsel and the Court to determine its accuracy. She tasked them with doing her job. To make all of this worse, when Pollick was given the opportunity to amend the petition – at a sanctions hearing – she refused. We know of no decision or rule of procedure that would suggest that counsel can be as reckless and irresponsible as Pollick insists she can be in her court filings.

This conduct is even more incomprehensible when we consider, as noted above, that, within five months of submitting this fee petition, Pollick had been warned about her billing practices by no less than two other judges in the same district court. One judge greatly reduced her fees;[25] the other completely denied her fee petition;[26] we affirmed both decisions.[27] It is obvious from our review of this record that

---

[24] *Hall*, 747 F.2d at 841-42.

[25] *See Souryavong*, 159 F.Supp. 3d at 525-42.

[26] *See Carroll*, 2014 WL 2860994, at *3-5.

[27] *See Sourvayong v. Lackawanna Cnty.*, 872 F.3d 122, 127-29 (3d Cir. 2017); *Carroll v. Clifford Twp.*, 625 F. App'x 43 (3d Cir. 2015) (not precedential).

8

the District Court acted well within its discretion in denying the entire petition here.

We have not previously, in a precedential opinion, had occasion to address whether 42 U.S.C. § 1988(b) permits courts to "deny a request for [attorney's] fees in its entirety when the request is so outrageously excessive [that] it shocks the conscience of the court."[28] In *Hall v. Borough of Roselle*, we did suggest that a district court has discretion to reject a fee petition submitted under § 1988 where the hours claimed were not only "grossly excessive but 'simply absurd.'"[29] However, we did not formally adopt that rule there because the fee petition at issue was not sufficiently egregious to warrant a complete denial of attorney's fees. Pollick's is.

In our recent decision in *Clemens v. New York Central Mutual Fire Insurance Company*, we swept more broadly, holding, in the context of Pennsylvania's Bad Faith Statute[30], that "where a fee-shifting statute provides a court discretion to award attorney's fees, such discretion includes the ability to deny a fee request altogether when, under the circumstances, the amount requested is 'outrageously excessive.'"[31]

We have no trouble agreeing with the District Court's conclusion that Pollick's fee petition clears the high threshold required by 42 U.S.C. § 1988 for a court to reject a petition in its entirety. The record here supports the Court's conclusion that Pollick's fee petition is not only grossly excessive and absurd, but also fraudulent. As noted above, the total amount of the recovery for Pollick's clients was $25,000. Yet, she

---

[28] *See M.G. v. East. Reg. High Sch. Dist.*, 386 F. App'x 186, 188 (3d Cir. 2010) (not precedential) (collecting cases); *see also Clemens v. New York Cent. Mut. Fire Ins. Co.*, No. 17-3150, slip op. at 3 (3d Cir. Sept. 12, 2018) (holding, in the context of a Pennsylvania fee-shifting statute, that "where a fee-shifting statute provides a court discretion to award attorney's fees, such discretion includes the ability to deny a fee request altogether when, under the circumstances, the amount requested is 'outrageously excessive.'"

[29] *See Hall*, 747 F.2d at 841-42.

[30] 42 Pa. Cons. Stat. § 8371

[31] *Clemens*, No. 17-3150, slip op. at 3.

submitted a fee petition in the amount of $733,002.23. As we also noted above, Pollick submitted this petition even though two different district court judges had been strongly criticized her submitting for submitting this kind of absurd fee petition. Those judges warned her against such excessiveness just months before she filed the instant petition.[32]

Pollick's response to the District Court's citation to those prior cases as support for the sanction it imposed here is either an amazing blend of irreverence and insolence, or an astonishing misunderstanding of what "non-precedential" means. She actually suggests that those decisions should have had no bearing on the Court's disposition of her fee petition here because we affirmed the orders imposing sanctions there in non-precedential decisions.[33] Since we did not issue precedential opinions in those cases, Pollick claims that she was free to ignore those District Judges' admonitions here. She actually purports to believe that the District Court should have ignored the fact that she had been warned and was on notice about this type of conduct.[34] According to Pollick, those district court opinions are not binding upon her even though those opinions were specifically directed at her and concerned this exact behavior.[35] It is nothing short of breathtaking that an attorney would seriously claim that the fact that a holding in a non-precedential decision of this Court is not binding on future panels of the Court licenses her to ignore the judges' reprimands in those cases. We need not respond to that assertion any further.

We now formally join our sister circuit courts of appeals and hold that under 42 U.S.C. § 1988(b), a court may deny a request for attorney's fees *in toto* where the request is so outrageously excessive that it shocks the conscience of the court.[36] We also formally apply our holding in *Clemens* to fee

---

[32] *See, e.g., Souryavong*, 159 F.Supp. 3d at 525-42; *Carroll*, 2014 WL 2860994, at *3-5.

[33] *See* Appellant's Br. at 34-35.

[34] *See id*.

[35] *See id*.

[36] *See Landow*, 999 F.2d at 96; *Lewis*, 944 F.2d at 958; *Brown*, 612 F.2d at 1059.

petitions filed pursuant to § 1988(b).[37] Accordingly, we affirm the District Court's denial of Pollick's fee petition under § 1988(b).

That does not, however, end our inquiry as we must also determine if the imposition of monetary sanctions was warranted and, if so, whether the imposed sanctions were excessive. We hold that, under the circumstances here, the sanctions were not an abuse of discretion.

## B. Whether a $25,000 sanction was excessive

The District Court sanctioned numerous violations of Rule 11, including those mentioned above, that need not be reiterated here.[38] We will stress, however, that Pollick's Rule 11 *coup de grace* was self-inflicted. She insisted that it was not her responsibility to ensure the accuracy of the fee petition – a document she filed with the District Court. That statement is diametrically opposed to the plain language of Rule 11 and fundamental notions of being a quasi-officer of the court.[39] The District Court surely did not abuse its discretion by finding that Pollick's conduct warranted sanctions and Pollick's arguments to the contrary are nothing short of frivolous. Therefore, we are left to determine whether the sanctions amounted to an abuse of discretion.

Where a district court decides to award a monetary sanction, the total amount of such a sanction should be guided by equitable considerations.[40] Among those considerations is

---

[37] *See Clemens*, No. 17-3150, slip op. at 3.

[38] The Court also sanctioned Ms. Pollick under 28 U.S.C. § 1927 for the same "vexatious conduct." *Young*, 269 F.Supp. 3d at 335-40. Since the sanctions were made concurrent and we affirm the sanction under Rule 11, we need not analyze the sanction under § 1927. *See Hassen v. Virgin Islands*, 861 F.3d 108, 114 (3d Cir. 2017) (holding that "we may affirm on any grounds supported by the record.").

[39] *See* FED. R. CIV. P. 11(b).

[40] *See Zuk v. Eastern Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 301 (3d Cir. 1996) (citing *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 195 (3d Cir. 1988)).

11

the sanctioned party's ability to pay.[41]  We have instructed courts to refrain from imposing monetary sanctions so great that they are punitive or that have the potential of putting the sanctioned party out of business.[42]

Pollick argues that she "is a sole practitioner and to require her to pay $25,000 to the [c]ourt is basically driving [her] out of the business of law."[43]  She relies on our decision in *Doering v. Union County Board of Chosen Freeholders* to support her argument.[44]  However, in *Doering*, the sanctioned attorney specifically asked the District Court to reduce the award and submitted evidence attesting to his limited financial resources.[45]  Here, Pollick did not request a reduction of the sanction, nor did she submit anything to substantiate her claimed inability to pay.

Given the absence of any showing that the sanction would "run her out of business," any request for a reduced sanction, and Pollick's refusal to amend her fee petition, we cannot say that the District Court abused its discretion by imposing a $25,000 sanction. [46]

---

[41] *Doering*, 857 F.2d at 195.

[42] *Id*. at 196 (citing *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1094, n.12 (3d Cir. 1988)).

[43] Appellant's Br. at 50.

[44] 857 F.2d 191 (3d Cir. 1988).

[45] *Id*. at 196.

[46] *See Watson v. City of Salem*, 934 F.Supp. 666, 668 (D.N.J. 1996) (finding sanctioned attorney's decision to rely on her assertions in court that, as a solo practitioner, she was unable to pay was unavailing and insufficient in the absence of any personal financial documentation); *see also In re Jackson*, 139 F.3d 901, 901 (7th Cir. 1998) ("Jackson also argues that the district court should have considered his inability to pay a monetary sanction before imposing his opponents' costs of appeal on him, but he waived this argument by failing to present it to the district court."); *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 652 (7th Cir. 1992) (finding that a sanctioned attorney cannot complain about the amount of the sanction where she waived the use of her ability to pay as a defense).

12

## C. Whether Referral to the Disciplinary Committee was warranted

Finally, Pollick complains that the District Court referred her to the Supreme Court's Disciplinary Board as part of the sanction. She claims that such a harsh sanction was unwarranted and the overarching goal of deterrence could have been achieved with a much less severe sanction. She ignores the fact that the Advisory Committee notes to Rule 11 specifically envision such a sanction for willful and repeated misconduct.[47] Moreover, the referral may well be required under the Pennsylvania Rules of Professional Conduct. Rule 8.3 provides that, "any lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform the appropriate professional authority."[48]

Moreover, the District Court was concerned that many of Pollick's entries in the fee petition appeared to be fraudulent. For that reason alone, referral for disciplinary review was appropriate. The referral was, after all, not a finding. It was a referral for further inquiry. Obviously, the ultimate resolution of that referral rests with the Disciplinary Board, not with the District Court or this Court.

Given the totality of Pollick's conduct here, as well as prior instances of apparent misconduct that the District Court quite properly considered,[49] we cannot conclude that the District Court acted improperly in referring Pollick to the Disciplinary Board.

---

[47] FED. R. CIV. P. 11 Advisory Committee Notes to 1993 Amendment ("The Court has available a variety of possible sanctions to impose for violations, such as . . . referring the matter to disciplinary authorities[.]").

[48] 204 PA. CODE § 81.4, Rule 8.3(a).

[49] *See Souryavong*, 159 F.Supp. 3d at 525-42; *Carroll*, 2014 WL 2860994, at *3-5.

Pollick's remaining contentions do not merit any additional discussion.[50]

### III.   CONCLUSION

In *Hall,* we observed: "[b]ecause . . . civil rights laws depend greatly upon private enforcement, [Congress] thought that fee awards were essential if private citizens were to have a meaningful opportunity to vindicate the important congressional policies contained in the civil rights laws."[51] Nothing that we have said today, in response to the very unique circumstances here, should in anyway be interpreted as mitigating the necessity of fee awards, our appreciation of those awards, or our appreciation for the many attorneys who extend themselves and their services to vindicate the civil rights of their clients. We emphasize, therefore, that although we affirm the denial of the fee petition *in toto* here, it is the exceedingly rare case where such a drastic sanction is appropriate.

---

[50] Pollick also alleged that (1) her clients' award was not *de minimus*; (2) the Rule 68 offer provided no limitation on attorney fees; (3) all of the activities for which she billed were intertwined and thus recoverable – including the first and second trials; (4) computerized chronological time records are not vague or ambiguous; (5) time spent with media, pre-trial administrative proceedings, and internal staff are all recoverable attorney fees; (6) there was sufficient evidence to support the billed rate of $400 per hour given Ms. Pollick's experience; (7) opinions from other District Court judges regarding prior fee petitions were not binding in later unrelated cases – even in the same District Court; (8) Rule 11 sanctions should not be entered sua sponte; (9) the District Court failed to provide adequate procedural protections before imposing sanctions; (10)  the District Court failed to give Ms. Pollick proper notice that monetary sanctions were being considered; (11) Ms. Pollick was not acting in bad faith in filing the fee petition; (12) the District Court imposed a higher sanction than permissible under § 1927; and (13) the fee petition should be considered by a new judge.

[51] *Hall*, 747 F.2d at 839.

Nevertheless, on this record, for all the reasons set forth above, we have no difficulty affirming the judgment of the District Court.